[No. A125012. First Dist., Div. Two. Feb. 5, 2010.]

HENRY JAMES KOEHLER, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
GILBERT PAPAZIAN et al., Real Parties in Interest.

**1156**

COUNSEL

Henry James Koehler, in pro. per.; and Barry M. Karl, under appointment by the Court of Appeal, for Petitioner.

Meyers, Nave, Riback, Silver & Wilson and Joseph M. Quinn for Respondent.

Perkins Coie and Kirk A. Dublin for Real Parties in Interest.

OPINION

**RICHMAN, J.**—Petitioner Henry James Koehler became the attorney for wife in the midst of an acrimonious and bitterly contested divorce proceeding. Confidential documents that were the property of some third parties had been provided to wife, and she and petitioner refused to return them, even after a court order to do so. Third parties obtained an order awarding $10,000 in discovery sanctions, which were not paid, and third parties initiated proceedings for indirect contempt. Petitioner resisted, represented by a court-appointed attorney, but without success, and was held in contempt and ordered to serve five days in jail, which he did. But he did not pay the $10,000.

Seven months later, apparently acting on its own and with no initiating affidavit, the superior court issued an order to show cause regarding contempt. Petitioner, again represented by court-appointed counsel, asserted jurisdictional, procedural, and substantive arguments in opposition. The superior court rejected the arguments, and ordered petitioner to serve another five days in jail, which he did. Less than two months later, again acting on its own and with no initiating affidavit, the superior court issued yet another order to show cause. Following a brief hearing at which petitioner appeared in propria persona, the court again held petitioner in contempt and ordered him to serve another five days in jail. This writ proceeding followed.

The leading expert on California judicial conduct has observed that "[t]he procedures for punishing direct, hybrid, and indirect contempt are different. Significant additional due process rights are involved in an indirect contempt that do not come into play in direct and hybrid contempt. For this reason, it is mandatory that judges be familiar with the procedures governing direct contempt. To invoke the power of contempt without knowing or learning the law is misconduct [citation]." (Rothman, Cal. Judicial Conduct Handbook (3d ed. 2007) § 4.01, p. 154 (Rothman).) What happened here did not measure up to that law, not by a long shot. Treating the petition as one for prohibition, we grant it, and thus annul the contempt order, bringing an end to a most unfortunate chapter in this family law saga.

## BACKGROUND

Husband and wife were embroiled in a vigorously contested divorce case in the San Mateo County Superior Court, which began in August 2002. (See *In re Marriage of Papazian* (Apr. 22, 2009, A114961, A116750, A117270) [nonpub. opn.].) Petitioner became wife's attorney in July 2005. According to petitioner, he became wife's attorney late in the proceedings, after wife's prior attorney "caved in" to husband's "fraud" in covering up his assets, and petitioner attempted to set aside various earlier entered orders. Once petitioner entered the fray, numerous charges and countercharges flew between the sides, which included scathing correspondence between petitioner and husband (who at times was representing himself). The details of all that occurred are not before us, but suffice to say that what we know was particularly unpleasant.

During the course of discovery, documents containing certain confidential information belonging to Lucky Strike Farms, Inc., Papazian Properties Company, and Gilbert and Margaret Papazian (collectively, third parties)[1] had been provided to wife. On April 25, 2006, third parties filed for a protective order requiring, inter alia, the return of these documents, and on August 8, 2006, they obtained an order to that effect, ordering return of the documents by no later than August 18. The documents were not returned.

On October 17, 2006, third parties moved for an award of discovery sanctions under Code of Civil Procedure sections 2017.020, subdivision (b), and 2023.030, subdivision (a), and for mandatory injunctive relief. They also sought an award of $17,270 from wife and petitioner, allegedly the attorney fees incurred in pursuing the protective order and in attempting to obtain the return of the documents.

---

[1] Papazian Properties Company is owned by Lucky Strike Farms, Inc., Papazian Investment Company and Gilbert and Margaret Papazian, who are the parents of husband in the divorce case.

A hearing on this motion was held on November 27, 2006, before the Honorable Clifford Cretan. After considering the arguments presented by both sides, Judge Cretan ordered both petitioner and wife to pay third parties sanctions in the amount of $10,000. With petitioner acting as her attorney, wife filed an appeal from that order. Petitioner did not file an appeal on his own behalf. On April 22, 2009, we affirmed both that order and other orders entered by the trial court. (*In re Marriage of Papazian, supra*, A114961, A116750, A117270.)

Petitioner never paid the $10,000 sanctions, and on May 30, 2007, third parties initiated contempt proceedings against him. Before turning to a discussion of what thereafter ensued, we set forth some fundamental principles regarding contempt, particularly indirect contempt.

### Some Fundamental Principles

We quoted above from Judge David Rothman, a recognized expert in the field of judicial conduct. Early in his lengthy chapter on contempt—a chapter replete with warnings and reminders about the necessity of judges' being especially vigilant in conducting contempt proceedings—Judge Rothman advises judges about "useful resources," including this: "For a useful and up-to-date reference on contempt and sanctions, see the Courtroom Control: Contempt and Sanctions, California Judges Benchguide (Revised 2006), produced by the Center for Judicial Education and Research of the Administrative Office of the Courts. . . ." (Rothman, *supra*, § 4.04, p. 157.)

Courtroom Control: Contempt and Sanctions, California Benchguide (Benchguide) is hardly the only readily available judicial resource regarding exercise of the contempt power. Another is the California Center for Judicial Education and Research's California Judges Benchbook: Civil Proceedings Before Trial (2d ed. 2008) (Benchbook), which "focuses on the judge's role," and provides "practical working tools to enable a judge to conduct proceedings fairly, correctly, and efficiently. [It is] written from the judge's point of view, giving the judge concrete advice on what to look for and how to respond." (Benchbook, Preface, p. v.) Chapter 17 of the Benchbook deals with sanctions and contempt.

██ Both the Benchguide and the Benchbook set forth in detail both the substantive law of contempt and the procedures to be followed; they also provide much practical advice. Illustrative is this from the Benchguide: "Civil contempt proceedings under CCP §§ 1209–1222, whether punitive or coercive, may arise out of either civil or criminal litigation. Furthermore, even though they are denominated civil, these proceedings are criminal in nature because of the penalties that a judge may impose. *People v. Gonzalez* (1996)

12 Cal.4th 804, 816 [50 Cal.Rptr.2d 74, 910 P.2d 1366]. The constitutional rights of the accused must be observed. See *Hicks v. Feiock* (1988) 485 U.S 624, 632 [99 L.Ed.2d 721, 108 S.Ct. 1423] (guilt in *criminal* contempt proceeding must be proved beyond reasonable doubt); *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1256, [265 Cal.Rptr. 144, 783 P.2d 731] (when there are punitive sanctions, guilt must be established beyond reasonable doubt). [Citations.]" (Benchguide, *supra*, § 3.25, p. 3-29.) The Benchbook is similar. (Benchbook, *supra*, § 17.77, pp. 439–440.)

Both books discuss the three types of contempt, direct, hybrid, and indirect, the last of which was invoked here against petitioner. "The facts supporting *indirect* contempt arise outside the judge's presence, requiring a more elaborate procedure to notify the person charged and to afford an opportunity to be heard. See CCP §§ 1211–1217; *Arthur v Superior Court* (1965) 62 C.2d 404, 407, 408, 42 CR 441 [398 P.2d 777]. A common example is a party's disobedience of a judge's order." (Benchbook, *supra*, § 17.78, p. 440.)

Both books also provide informative discussions of the difference between punitive and coercive forms of punishment. The Benchguide makes clear, for example, that "[i]n punitive proceedings, commonly referred to as 'civil-punitive,' the court may impose a fine not to exceed $1000 and/or a term of imprisonment not to exceed five days to punish a party for each separate act of contempt. See CCP § 1218(a); *Fine v. Superior Court* (2002) 97 Cal.App.4th 651, 674 [119 Cal.Rptr.2d 376] (five-day sentence was appropriate punishment for attorney adjudged in contempt for filing false statement of disqualification under CCP § 170.1). See also CCP § 1218(b)–(c) (punishment for failure to comply with family court order). On what constitutes a separate act of contempt, see *Donovan v. Superior Court* (1952) 39 Cal.2d 848, 855 [250 P.2d 246] (four distinguishable violations of injunction warranted multiple fines); *Conn v. Superior Court* (1987) 196 Cal.App.3d 774, 786 [242 Cal.Rptr. 148] (contemner's repeated failures to turn over documents as ordered constituted single act of contempt). The test is whether there were separate insults to the court's authority, several of which may occur on the same day. *Reliable Enterprises, Inc. v. Superior Court* (1984) 158 Cal.App.3d 604, 621 [204 Cal.Rptr. 786] . . . (multiple fines for separate violations of injunction occurring on different days.)" (Benchguide, *supra*, § 3.28, p. 3-30.)

█ "In coercive proceedings, the court uses imprisonment to compel performance of some act or duty required of a person that the person has the ability, but refuses, to perform, *e.g.*, to answer a question as a witness. CCP § 1219(a). . . . The court must specify the act to be performed in the warrant of commitment. See CCP § 1219(a); *Morelli v Superior Court* (1969) 1 Cal.3d[ 328], 332 [82 Cal.Rptr. 375, 461 P.2d 655]; *H. J. Heinz Co. v Superior*

*Court* (1954) 42 Cal.2d 164, 174 [266 P.2d 5]. [¶] JUDICIAL TIP: In selecting the appropriate punishment, the court should weigh the effect of any mitigating circumstances. [Citations.]" (Benchguide, *supra*, § 3.29, p. 3-31.)

Other available practice guides explain not only the general rules and procedures, but precisely what must be proven at an indirect contempt proceeding. For example, one leading practical treatise distills it this way, in bullet point fashion: "In indirect contempt proceedings based on disobedience of a prior court order, a valid judgment must meet 'strict requirements.' Each of the following must be established:

"• Facts establishing court's *jurisdiction* (e.g., personal service or subpoena, validity of court order allegedly violated, etc.);

"• *Defendant's knowledge* of the order disobeyed;

"• Defendant's *ability to comply*; and

"• Defendant's *willful disobedience* of the order."

(Wegner et al., Cal. Practice Guide (The Rutter Group 2009) § 12:432, p. 12-88 (rev. # 1, 2007).)

The other leading practical treatise lists the same four issues. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) § 9:712, p. 9(II)-48.3 (rev. # 1, 2007).) And, later elaborating on the third issue, it says this: "Ability to comply is sometimes obvious, particularly where the violation is of a strictly prohibitory injunction. But in any case, it must be proved by competent evidence." (Weil & Brown, *supra*, § 9:724, p. 9(II)-48.8.) "The burden of proof is on the *moving party* to prove the respondent's ability to comply (rather than on the respondent to prove inability)." (*Id.* at § 9:724.1, p. 9(II)-48.8.)

## The Contempt Proceedings

As noted, third parties initiated contempt proceedings on May 30, 2007, by submitting an affidavit of facts allegedly constituting contempt. Represented by a major law firm, third parties filed an "Order to Show Cause and Affidavit for Contempt." The factual showing in the affidavit included a lengthy attachment and five exhibits, providing evidence of third parties' unsuccessful attempts to negotiate a settlement of the issue, and to recover the sanctions award.

On July 16, 2007, the matter came on for arraignment before Judge Cretan, the judge who had issued the sanction order. Petitioner appeared on his own

behalf and requested the services of a public defender. Judge Cretan paused the proceeding to have petitioner fill out a financial statement, and then questioned petitioner concerning it. Petitioner acknowledged that he had Social Security income, but that he received "very, very little" income from his legal practice and had been sick. Apparently satisfied with petitioner's inability to pay for counsel, Judge Cretan ruled that it would appoint a private defender[2] to represent petitioner, which he later did. Asked how he pled, petitioner reaffirmed he was making a special appearance, so Judge Cretan entered "a denial or not guilty plea on [petitioner's] behalf." This was Judge Cretan's last involvement in any aspect of any contempt proceeding.

Petitioner petitioned this court for a writ of mandate or prohibition on July 17, 2007. After full briefing, we denied that petition on August 17, 2007.

Third parties resumed the contempt proceedings on July 3, 2008, proceeding under Code of Civil Procedure sections 1209, subdivision (a)(5) and 1218, subdivision (a), and the matter came on for hearing on July 10, 2008. Third parties were represented by counsel, as was petitioner, by his court-appointed counsel. The hearing began with counsel for third parties adverting to an in-chambers discussion:

"There was a pending discussion before your Honor on the issue of ability to pay and whether that is an affirmative defense which Mr. Koehler has to prove or whether that is part of our case in chief. And I believe your Honor gave us her tentative thoughts in chambers on that." After brief colloquy, the court responded, "It's the court's view, and I think I've indicated this in chambers, and we can certainly put all the arguments on the record, it is not your burden to prove that. That is an affirmative defense in the court's mind, and you will have plenty of opportunity to address that issue, Mr. Demeester. But it is an affirmative defense if presented by the citee, the defendant, or a lack of ability to pay. And then that becomes a different issue. So that's the court's view."

Third parties presented documents and testimony demonstrating that Judge Cretan had issued a valid order in November 2006, requiring petitioner to pay $10,000 as a discovery sanction; that petitioner was aware of this order; and that he had made no payments in compliance with it.

Petitioner cited to a different order issued by Judge Cretan, this on December 6, 2006, requiring wife—and only wife—to pay $10,000 in

---

[2] San Mateo County does not have a public defender. Making the determination that petitioner was entitled to court-appointed counsel, Judge Cretan necessarily determined that petitioner was not "financially able to employ counsel and qualifie[d] for the services" of the public defender. (See Gov. Code, § 27707.)

sanctions under Family Code section 271, arguing that that order recited an ambiguity that relieved him of his obligation under the November 2006 order. Petitioner also argued that it was the burden of the moving parties to establish that he had an ability to pay the sanction, and that they failed to prove that ability or his willful disobedience of that order. The trial court ruled that the December 2006 order was irrelevant to the contempt proceedings, as it did not pertain to petitioner, and did not vacate or modify the November 2006 order.[3] Significantly, the trial court also ruled "that ability to pay is an affirmative defense that can be presented by defendant, and that has not been done here."

At the conclusion of the hearing, the trial court found petitioner in contempt for failing to comply with the November 2006 order. It then considered arguments regarding the appropriate punishment, found that a fine would not likely coerce petitioner into compliance (given that he had not paid any part of the sanction specified by the Nov. 2006 order), and sentenced him to five days in jail, with a surrender date of August 23, 2008, and with a recommendation that he be able to complete his sentence through a work program in his home county, Riverside.

At some point, petitioner applied to the Riverside County sheriff's office to participate in a work release at their jail and on August 21, was advised to return on Tuesday, August 26, rather than August 23. In the mid-afternoon of August 25, 2008, the day before he was to return to jail, and representing himself, petitioner filed a belated petition for writ of habeas corpus in this court, which we denied the next day. Petitioner served the five-day jail sentence.

On February 24, 2009, a second contempt proceeding was initiated via an "Order to Show Cause Re: Contempt." The order to show cause has no counsel of record, and is signed by the trial court; it is not under oath. The record does not indicate what caused this second contempt proceeding to be generated, and we assume the court generated it on its own accord.

The order to show cause is four short paragraphs, and begins, however imprecisely, as follows: "On November 27, 2006, discovery sanctions of $10,000 payable to this court on or before January 30, 2007, were imposed against Henry James Koehler, counsel for Respondent in this matter, by the Honorable Clifford V. Cretan pursuant to Family Code section 271.[4] As of

---

[3] In our April 2009 affirmance of the trial court's three orders in the dissolution action, we agreed with the ruling of the trial court and specifically stated that the December 2006 order was either mistakenly filed or incorrectly prepared by the trial court, and directed it to correct that order to conform to the November 2006 order.

[4] The Family Code section was not involved, as the trial court had already ruled.

February 24, 2009 those sanctions have not been paid." The fourth paragraph concludes with this: "Note that all of the elements of contempt were found true at the contempt proceedings against Henry James Koehler on July 10, 2008. Therefore, there is no need for an initiating affidavit in this new contempt proceeding. The factual findings made at the conclusion of the July 10, 2008 hearing have been substituted for an initiating affidavit for this new order to show cause re: contempt."

The contempt hearing was held on March 25, 2009, as ordered. There was no appearance on behalf of third parties. Petitioner was represented by new (apparently still court-appointed) counsel, who had substituted in and was "specially appearing . . . for the purpose of contested [*sic*] jurisdiction of this hearing." Counsel challenged the court's jurisdiction on the basis that the reference to Family Code section 271 and the statement that sanctions were payable to the court were inaccuracies in the order to show cause, and that petitioner was never properly joined as a party. The trial court responded as follows: "THE COURT: Well, I mean, Mr. Koehler knows we had a huge hearing on this where he was found in contempt. So if the court misstated that it was payable to this court or to Lucky Strikes Farm in any event, that's—that may just be—that doesn't affect these proceedings, counsel. [¶] He knows what the issue is before the court. He was ordered to pay a $10,000 discovery sanction by the trial court. We had a hearing on it. He was found in contempt of court. And he hasn't as yet paid that $10,000. So that's why we are here today."

Petitioner's counsel responded that he believed "the need for accuracy in the order to show cause re contempt is jurisdictional," and then complained that petitioner was improperly joined in the case. After some colloquy about the joinder issue, the trial court said it would take a "brief recess and just look at the complete file that is in chambers." The court returned a short time later, and the following ensued:

"THE COURT: Very well. Thank you. The court was just in recess very briefly. [¶] Counselor, I was taking a look at the file, and unfortunately I think you are incorrect on both issues. According to the minutes of the court on November 27, 2006, the minutes of the court clearly say sanctions in the sum of $10,000 dollars are imposed against Henry James Koehler per Family Code section 271 to be paid to the court on or before January 30, 2007. So that's as to the first issue.

"MR. CORDLE: I'm sorry, 271 is only against parties as a matter of law.

"THE COURT: I am just reading to you the exact language in the minutes which the court adopted in the re contempt."

Two pages later the trial court affirmed that "we are two years and . . . four months into that order where [petitioner] was ordered by Judge Cretan to pay $10,000 in discovery sanctions pursuant to Family Code section 271 to be paid to the court. . . ."

Petitioner's counsel pressed on, concluding that there was a "defective order" to show cause regarding contempt, and objected to "any order for contempt based on payment of 271 sanctions . . . as such 271 sanctions are not enforceable against him as a matter of law."[5] It was all to no avail.

The trial court amended the order to show cause to reflect that the sanctions were payable to third parties. It then found that the elements of contempt were previously established at the July 10, 2008 hearing, and that petitioner had still refused to pay the sanctions award. The trial court again sentenced petitioner to another five days of confinement with a self-surrender date. Petitioner served that second five-day sentence in early April 2009.[6]

On May 14, 2009, another "Order to Show Cause Re: Contempt" was filed, once again signed by the trial court. As before, the order to show cause appears to be generated by the court itself. As before, it is not under oath. As before, it was four short paragraphs. As before, it began—incredibly in light of all that transpired—by stating that the trial court had imposed the sanctions "pursuant to Family Code section 271." And as before, it concludes with this: "Note that all of the elements of contempt were found true at the contempt proceedings against Henry James Koehler on July 10, 2008. Therefore, there is no need for an initiating affidavit in this new contempt proceeding. The factual findings made at the conclusion of the July 10, 2008 hearing have been substituted for an initiating affidavit for this new Order to Show Cause Re: Contempt."

Petitioner filed opposition and on May 27, 2009, made a "special appearance" before the trial court, this time in propria persona. The trial court inquired as to whether petitioner had paid the $10,000. Petitioner refused to answer, asserting his constitutional rights. Petitioner objected to the form of service of the notice of hearing, specifically noting that he had not been personally served. He argued that the matter should be continued to permit him to obtain legal representation and witnesses. And he also argued that the two previous sentences for contempt had been punitive, not coercive.

---

[5] It is not disputed that Family Code section 271 sanctions can be assessed only against a party.

[6] On May 27, 2009, after he had served the five days in jail, petitioner filed in this court a petition for habeas corpus. We summarily denied the petition the next day, as we lacked jurisdiction. (See *Maleng v. Cook* (1989) 490 U.S. 488, 491–493 [104 L.Ed.2d 540, 109 S.Ct. 1923] [habeas corpus does not lie for petitioner who is no longer in actual or constructive custody].)

The trial court explained that the court mailed petitioner a notice of hearing, consistent with its past practice. It also stated that the elements of contempt were established at the July 10, 2008 hearing, and that the time had passed for him to challenge the validity of the November 2006 order. Petitioner stated that he was tendering to the court a motion to quash based on "triple jeopardy" and the running of the statute of limitations. The trial court rejected all this, and stated: "This is a continuing contempt for this court," and again sentenced petitioner to five days in jail. The hearing lasted all of 11 minutes, and generated a transcript eight pages in length.

On May 29, 2009, petitioner filed in this court a petition for a writ of habeas corpus. That same day we issued a stay of the trial court's contempt order and a request for informal opposition. Our request was served on several parties, including third parties (as real parties in interest), and the Attorney General, on whom we customarily serve all habeas corpus petitions. No opposition was filed, and on July 28, 2009, we issued an order requesting the trial court to show cause why the relief sought in the petition should not be granted. Following that order, on August 14, 2009, we received "San Mateo County Superior Court's Return" to the order to show cause, filed by a private law firm, not county counsel. We appointed counsel for petitioner, who filed a traverse, following which we heard oral argument.

## DISCUSSION

### Preliminary Matters

As noted, petitioner has filed a petition for habeas corpus. As also noted, the superior court has appeared on its own behalf. This state of affairs leads to two preliminary issues: (1) whether in light of petitioner's out-of-custody status he has filed the appropriate writ; and (2) whether the return has been filed by the proper party.

■ While habeas corpus is obviously the appropriate remedy for an imprisoned contemnor (see *In re Buckley* (1973) 10 Cal.3d 237, 259 [110 Cal.Rptr. 121, 514 P.2d 1201]), petitioner is not imprisoned. However, prohibition lies to determine whether a superior court has imposed an invalid contempt order (*Lister v. Superior Court* (1979) 98 Cal.App.3d 64, 69 [159 Cal.Rptr. 280]; *Hanson v. Superior Court* (2001) 91 Cal.App.4th 75, 80 [109 Cal.Rptr.2d 782]; see generally *Bellas v. Superior Court* (2000) 85 Cal.App.4th 636, 653 [102 Cal.Rptr.2d 380]), and we will proceed by treating the petition here as one for prohibition.

■ Turning to the return filed by the superior court, there is a real question whether it is proper, and the court's opposition properly before us. It

has been held that "Absent issues which directly impact the efficient operation of the court or the court's budget, the respondent court is not justified in taking an adversary role in writ proceedings." (*Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 576, fn. 6 [105 Cal.Rptr.2d 896].) This is based on the principle that a superior court generally does not have standing to appear in this court to defend its own rulings. (See *Neblett v. Superior Court* (1948) 86 Cal.App.2d 64, 66–67 [194 P.2d 22] [annulling contempt order challenged by petition for writ of certiorari but dismissing petition as to individual judge]; see also *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1066, fn. 4 [103 Cal.Rptr.2d 751, 16 P.3d 166]; and 8 Witkin, Cal. Procedure (5th ed. 2008) Extraordinary Writs, § 166, pp. 1073–1074.)

"Although rare, respondent court may oppose the writ petition when: '(1) the real party in interest did not appear; and (2) "[t]he issue involved directly impacted the operations and procedures of the court or potentially imposed financial obligations which would directly affect the court's operations." ' " (*Settlemire v. Superior Court* (2003) 105 Cal.App.4th 666, 669 [129 Cal.Rptr.2d 560].) While the setting here meets the first but not the second component of this exception, rather than request further briefing on these questions—and cause even further expense to the superior court—we follow the approach in *Grant v. Superior Court* (2001) 90 Cal.App.4th 518 [108 Cal.Rptr.2d 825], a judicial disqualification case. There, the court concluded that while the superior court lacked standing to defend itself, "because respondent court's brief is of assistance to this court and because we recognize the impact of disqualification orders upon the court's case management system, we will consider the court's return as an amicus curiae brief filed in support of real parties in interest." (*Id.* at p. 523, fn. 2.)

We thus turn to the merits of the matter—and conclude that petitioner's position is well taken.

### The Standard of Review

As our Supreme Court has often noted, "In the review of a contempt proceeding 'the evidence, the *findings*, and the judgment are all to be strictly construed in favor of the accused [citation], and no intendments or presumptions can be indulged in aid of their sufficiency. [Citation.] If the record of the proceedings, reviewed in the light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled.' (*Hotaling* v. *Superior Court* (1923) 191 Cal. 501, 506 [217 P. 73], italics added.)" (*Mitchell v. Superior Court, supra,* 49 Cal.3d at p. 1256.) Thus, there is no presumption of regularity in contempt proceedings (*In re Wells* (1946) 29 Cal.2d 200, 201

[173 P.2d 811]; *Powers v. Superior Court* (1967) 253 Cal.App.3d 617, 619 [61 Cal.Rptr. 433]; *In re Mancini* (1963) 215 Cal.App.2d 54, 56 [29 Cal.Rptr. 796]), nothing can be implied in support of an adjudication of contempt (*In re Scroggin* (1951) 103 Cal.App.2d 281, 283 [229 P.2d 489]), and the record must be strictly construed in favor of petitioner, the one found in contempt. (*Raiden v. Superior Court* (1949) 34 Cal.2d 83, 86 [206 P.2d 1081].)

## The Requisite Procedures Were Not Followed, the Applicable Law Was Not Applied

We begin with discussion of what occurred at the third hearing, on May 27, 2009, which began at 10:44 a.m. and was over by 10:55 a.m. Again, there was no appearance by third parties. Petitioner appeared, this time in propria persona. After satisfying itself that petitioner could hear,[7] the trial court started with this:

"THE COURT: Okay. Thank you, sir. Well, Mr. Koehler, you are before the court on an in re contempt for the third time for failure to pay a $10,000 discovery sanction that was payable to Lucky Strike Farms, Inc. that was the order of the trial court on November 27, 2006; was to be paid by January 30, 2007.

"We had a hearing in this matter in July of 2008 and I brought you before the court twice before and sentenced you to county jail on two prior occasions. This is the third time I've brought you back before the court. Have you paid that $10,000 discovery sanction, sir?

"THE DEFENDANT: Without counsel here obviously that would be a Fifth Amendment testimony matter. I am making a special appearance. I take it the court has gotten and read the motion to quash today, but my offer is and the court read it is that I'm willing to accept service because it wasn't personally served. I would accept it today with the condition that I get the required 16-day court time under CCP 1005. Did the court get a chance to read that?

"THE COURT: Yes. The last time you were in court you had an attorney with you, that was Mr. Cordle and at the previous two times. We also mailed you the notice for hearing to appear before the court as with your attorney, which is the same thing we did this time, so this time you're objecting that the court has to personally serve you is your position; is that correct, Mr. Koehler?

---

[7] Petitioner is 75 years old, has a hearing impairment, and frequently appears in a wheelchair in his court appearances.

"THE DEFENDANT: I believe that's the law. That's CCP 1016 is the *Cedars-Sinai* [*Imaging Medical Group v. Superior Court* (2000) 83 Cal.App.4th 1281 [100 Cal.Rptr.2d 320]] case, but you notice that on the last page of that, I've said that as an officer of the court, I'm not trying to hide and I'm more than willing to accept service of it today, personal service if I get in exchange for the required 16 court days that I would get anyway under a motion.

"THE COURT: Thank you, sir. The court is going to respectfully deny your request. . . .

"In any event, the court has already conducted a hearing in this matter and found you in contempt of court for failure to abide by a ruling of the trial court back in 2006. Again, this is the third time you've been before the court. Very well, sir, is there anything else you'd like to say?

"THE DEFENDANT: Yes. . . . Clearly this is a third trial. It's a separate trial. It is not a continuing trial; it is a third one. The notice at any rate even if it had been served correctly on May 14, only gave me eight court days, this is the 8th court day; and therefore, I make my motion to have my 16 court days, which would continue this matter, I believe until June 15 so that I have the necessary notice and opportunity for obtaining counsel and obtaining witnesses and evidence and so on.

"THE COURT: Sir, I think you misunderstand the procedure before the court. We've already had a hearing on this matter and all of the elements of contempt were found true on July 10 of 2008. You had a hearing, you were represented by counsel, and the court found you in contempt; therefore, there is no need for an initial hearing or affidavit in these new contempt proceedings. We don't have hearing after hearing on the same facts, sir. You were found guilty of contempt for failure to pay a $10,000 discovery sanction as an attorney of law, so you misunderstand the law, sir. It would make no sense to have a hearing each and every time on the very same issue. We have done that already. . . .

"Very well. Your objections are noted for the record, sir, and the court is going to sentence you to five days in the county jail. . . .

"THE DEFENDANT: May I?

"THE COURT: We've been down this road two times before, sir, and it is regretful that the court continues to have to do this. The court takes no joy in doing this; however, this is the only way that the court can enforce its orders in this matter."

A minute order was issued that day which provided in its entirety as follows: "Attorney Koehler argues that he was not properly served in this matter. He requests a continuance and offers to accept service in court today. [¶] Attorney Koehler's Motion to Continue is DENIED. [¶] THE COURT SENTENCES HENRY JAMES KOEHLER FOR FAILURE TO PAY THE $10,000.00 COURT ORDERED SANCTION OF 11/27/06 AS FOLLOWS: [¶] SERVE 5 DAYS IN COUNTY JAIL. [¶] SURRENDER TO SAN MATEO COUNTY JAIL ON 6/2/09 AT 10AM. [¶] SHERIFF'S WORK PROGRAM IS NOT RECOMMENDED." That same day the court filed an order remanding petitioner into custody.

The third contempt proceeding was improper in at least four particulars.

■ First, it was not properly begun. It has long been the rule that the filing of a sufficient affidavit is a jurisdictional prerequisite to a contempt proceeding. (See *Warner v. Superior Court* (1954) 126 Cal.App.2d 821, 824 [273 P.2d 89].) As our Supreme Court put it in *Ryan v. Commission on Judicial Performance* (1988) 45 Cal.3d 518, 532 [247 Cal.Rptr. 378, 754 P.2d 724], "[Code of Civil Procedure] [s]ection 1211 requires that an affidavit be presented to the judge reciting the facts constituting contempt. No such affidavit was presented. . . . Thus, the Commission was correct in concluding that Judge Ryan's contempt order was procedurally invalid." In short, indirect contempt requires there be an initiating affidavit, and without one any contempt order is void. (*In re Cowan* (1991) 230 Cal.App.3d 1281, 1286–1287 [281 Cal.Rptr. 740].)

■ Second, a contempt citation must be served personally. Service of an order to show cause to bring a party into contempt is insufficient if made by mail on the party's attorney of record. This was the express holding of *Cedars-Sinai Imaging Medical Group v. Superior Court, supra,* 83 Cal.App.4th at page 1287, footnote 6—the very case petitioner cited to the trial court.

■ Third, as the Benchbook states the rule, "Because the contemptuous act occurred outside the judge's presence, a valid order and judgment of indirect contempt must cover the following elements: the issuance of an order, the contemner's knowledge of the order, the contemner's ability to obey it, and the contemner's willful disobedience. See *In re Jones* (1975) 47 CA.3d 879, 881, 120 CR 914. The order and judgment must state evidentiary facts supporting a finding of each of these elements, except that it need not state such facts in support of the finding of willfulness, which may be inferred from the circumstances." (Benchbook, § 17.112, p. 458.) The minute order here falls short in all respects.

■ Fourth, the trial court responded to petitioner's argument of "triple jeopardy" by asserting that each day that petitioner had not paid the $10,000

was "technically . . . a new contempt." This was wrong. The preclusion of multiple punishment in Penal Code section 654 applies in civil contempt, to the extent the punishment is punitive in nature. (See *Mitchell v. Superior Court, supra,* 49 Cal.3d at p. 1246; *Conn v. Superior Court, supra,* 196 Cal.App.3d at p. 786; *In re Farr* (1976) 64 Cal.App.3d 605, 614–615 [134 Cal.Rptr. 595].) *Conn* is on point. There, while upholding the contempt as proper, the court held it was improper to impose multiple punishments for what was basically a single disobedience, although continuing in nature. And the disobedience there? A refusal to return privileged documents. The test is whether there are " 'separate insults to the authority of the court, not whether the insults happened to occur on the same or different days.' " (*Conn, supra,* 196 Cal.App.3d at p. 787, citing *Reliable Enterprises, Inc. v. Superior Court, supra,* 158 Cal.App.3d at p. 621.) In sum and in short, the third contempt was improper, both procedurally and substantively.

Petitioner has, as noted, already served two five-day sentences, so any claim as to the impropriety of the first or second contempt proceeding is not before us. However, since the order to show cause involved in the third contempt—however inadequate it was—referred to the earlier proceedings, and because the brief hearing on the third contempt referred to earlier proceedings, any defect in any earlier proceeding is pertinent. And defect there was, especially in the proof required.

As noted, from the outset petitioner's counsel took the position that third parties had the burden to prove that petitioner had the ability to pay. Third parties' position was that inability to pay was an "affirmative defense." The trial court expressly agreed. The law is contrary. (*Mitchell v. Superior Court, supra,* 49 Cal.3d at p. 1256; *Anderson v. Superior Court* (1998) 68 Cal.App.4th 1240, 1245 [80 Cal.Rptr.2d 891]; *In re Cassil* (1995) 37 Cal.App.4th 1081, 1088–1089 [44 Cal.Rptr.2d 267].)[8] Thus, there was no substantial evidence that petitioner had the ability to comply with the order, so the contempt "must be reversed and annulled." (*In re Cassil, supra,* 37 Cal.App.4th at pp. 1088–1089.)

Not only did the trial court hold petitioner in contempt, but on May 27, 2009, it also caused a discipline referral form to be submitted to the State Bar.[9] Despite all that had occurred, the form inexplicably stated that the referral was "for a $10,000 discovery sanction imposed against Mr. Koehler on November 27, 2006, pursuant to [Family Code] section 271." And, the form said, the "nature of the criminal offense" was petitioner's "contempt of

---

[8] An exception to this is in an order for child support, where inability to pay is an affirmative defense. (*In re Ivey* (2000) 85 Cal.App.4th 793, 798 [102 Cal.Rptr.2d 447].)

[9] The form was actually submitted by her courtroom clerk, with the trial court listed as the person to be contacted for further information.

court failed to comply with November 27, 2006 court order." This referral apparently had a drastic effect, as at oral argument his counsel represented that petitioner has been "disbarred."[10]

## Some Closing Observations

One of the many inexplicable aspects of this case is how a person deemed sufficiently impecunious to be entitled to appointed counsel can be held in contempt and incarcerated for failure to pay a $10,000 fine—indeed, on the trial court's theory, repeatedly so held and repeatedly incarcerated, apparently ad infinitum.

Quoting various sources, Judge Rothman emphasizes the "importance [to judges] of knowing the law of contempt," saying this: "The Commission on Judicial Performance has stated that, '[b]efore sending a person to jail for contempt, or imposing a fine, judges are required to provide due process of law, including strict adherence to the procedural requirements contained in the Code of Civil Procedure. Ignorance of those procedures is not a mitigating but an aggravating factor.' [¶] A judge, therefore, is obliged to know proper contempt procedures. 'The contempt power, which permits a single official to deprive a citizen of his [or her] fundamental liberty interest without all of the procedural safeguards normally accompanying such a deprivation, must be used with great prudence and caution. It is essential that judges know and follow proper procedures in exercising this power, which has been called a court's "ultimate weapon." ' " (Rothman, *supra*, § 4.03, p. 156, fns. omitted.) To put Judge Rothman's strong admonitions in the vernacular, any trial court exercising the "ultimate weapon" must be absolutely certain that it not only knows the law, but that it has also dotted all the *i's* and crossed all the *t's*. What happened here was a far cry.

■ Beyond what we gleaned from the correspondence mentioned above, we do not know much of what occurred in the course of petitioner's representation of wife below. Maybe petitioner was difficult to deal with. Certainly he ignored the $10,000 sanction (assuming he was able to pay it). Perhaps he was even contumacious. But whatever the characterization of petitioner's conduct, he, like all others, is entitled to the due process the law requires. This, he did not get.

---

[10] The official State Bar Web site lists petitioner's status as "Not Eligible To Practice Law." (State Bar of California, Attorney Search <http://www.calbar.ca.gov/state/calbar/calbar_home.jsp> [as of Feb. 5, 2010].)

## DISPOSITION

Petitioner's petition is treated as one for prohibition, and is granted, and the order of contempt is reversed and annulled.

Kline, P. J., and Haerle, J., concurred.