Filed 9/7/22  Leohner v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

RICHARD M. LEOHNER, JR.,

     Petitioner,

v.

THE SUPERIOR COURT OF HUMBOLDT COUNTY,

     Respondent;

MAGGIE FLEMING, as District Attorney, etc.,

     Real Party in Interest.

A164631

(Humboldt County
Super. Ct. No. CR2102316)

 

In this writ proceeding, petitioner Richard M. Leohner, Jr., an attorney, challenges an order of contempt issued by the superior court during a criminal trial.  After careful review of the record, we will grant a peremptory writ of prohibition and order count 2 of the contempt order annulled.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Trial Court Proceedings*

Leohner was trial counsel for defendant Delano Blayze Malang in a criminal proceeding pending in Humboldt County Superior Court.  On February 14, 2022, Malang's jury trial began with Leohner representing him.

On February 17, 2022, Leohner was cross-examining Heidi Groszmann, a police officer and prosecution witness, when the court held an Evidence Code[1] section 402 hearing (section 402 hearing) to consider whether certain audio portions of body-worn camera videos from three different police officers should be redacted. The court noted the section 402 hearing was as to the "audio of the video. . . . In other words, it's not so much the video itself, it's what's being said on the video that we are talking about."

The prosecution sought to exclude audio portions of the videos that included statements made by bystanders to the officers after Malang was arrested. The prosecutor argued the statements were prejudicial and were irrelevant to whether the officers had probable cause to arrest Malang. Defense Counsel Leohner, on the other hand, sought "to introduce body-worn cameras [*sic*] full with audio" and argued the jury should be able to hear all of the statements on the videos because it "all goes towards the lawful performance of [the officers'] duties."[2] The trial court agreed with the prosecution's argument that the challenged statements were irrelevant and should be excluded. After hearing argument and watching portions of the videos, the trial court ruled, "[T]he videos we'll play are the videos that the People have redacted. And they'll be marked and come into evidence."

After the jury was brought back in, Leohner continued his cross-examination of Officer Groszmann. While questioning her about the video from her body-worn camera, Leohner asked: "May I have Defense Exhibit

---

[1] All statutory references are to the Evidence Code.

[2] During the section 402 hearing, the court clerk marked the unredacted videos of the body-worn camera evidence as defense exhibits A, B, and C.

A?"[3]  The court called counsel to the bench.  After an unreported sidebar discussion, Leohner said on the record:  "I need Defense Exhibit A back.  Let's do People's Exhibit—what's the redacted version?"  The clerk and prosecutor noted it had not been marked yet, and the prosecutor requested permission to approach the bench.  Another discussion was held off the record.

The court then excused the jury and held a discussion on the record with the attorneys about use of the Groszmann video during Leohner's cross-examination.  The court ruled the video was outside the scope of the direct because the prosecution had not entered it as an exhibit during direct examination.  The court determined the prosecutor could enter the video on redirect and Leohner could question Groszmann about it during recross examination.

After a recess, followed by a brief update regarding a scheduling matter, the prosecutor told the court that "in the presence of the jury Mr. Leohner violated the Court's Order the [section] 402 motions [*sic*] where the Court had ordered only portions of Sergeant Groszmann's body-worn camera [video] to be introduced into evidence and in direct violation of Court Order he attempted to put in his unredacted version.  When the Court admonished him not to[,] he then let the jury know that the People's evidence has been redacted."  The court then asked the prosecution, "Are you asking for me to do anything in front of the jury with that?"  The prosecutor responded, "Your Honor, any corrective measures that you think is appropriate [*sic*], I would submit on.  If you think that none are appropriate, I would submit on that."  The court invited Leohner to comment and he responded, "I submit to the Court's unfettered discretion."

---

[3] Exhibit A was Officer Groszmann's body-worn camera video.

The court then said: "Okay. So . . . , the purpose of a [section] 402 [hearing] is to do these things outside of the presence of the jury. So to try to get in something that it was clear you weren't supposed to get in and then tell the Court at sidebar that you wanted to put it in and then have me shut you down is inappropriate and it's unethical. So I'll warn you not to do that again in this courtroom. Do you understand that?" Leohner said, "Understood." The court continued, "Okay. And then as to mentioning, we are not going to mention it's redacted. I think me doing something with the jury is just going to bring more attention to it. It was brief. They may have heard the word redact, but I think it may do more harm than good to make them think about it even more. But we can think about that. I can do something at closing arguments. The sound is going to go away in the video, so that might be a little weird for them, so we might have to address it there. So let's see how that plays out."

On February 22, on its own motion, the trial court adjudicated a direct contempt proceeding against Leohner for his noncompliance with court orders. Outside the jury's presence, the court told Leohner: "So last week I warned you I think three times. At one point you indicated that you were ready for sanctions. I think you said something that [*sic*], 'I'm prepared for that.' You also said to the Court that you intentionally put evidence— attempted to put evidence in front of this jury so that I would admonish you in front of the jury. The exact opposite of what the [section] 402 hearing process is about." The court summarized other alleged instances of direct contempt, then stated: "I warned you that continued behavior attempting to get evidence that has already been ruled on as irrelevant . . . , the purpose of a [section] 402 hearing is so we can hear evidence before the jury hears it to determine legal determinations. Those determinations were made and you

disagree.  And instead of listening to a Court Order you just continued to try to get it in any way you could."  The court invited Leohner to respond.

Leohner answered he disagreed with the court's characterization of his conduct but had nothing to say to the court "at this time."  He asked for legal counsel to be present before addressing the court.  The court explained to Leohner that he had violated its ruling.  The court noted Leohner "had the weekend" to consider his behavior, "but today the first opportunity you get you have to talk about the omissions and you make the same objections that you lost in the [section] 402 [hearing]. . . . I mean, you basically came up here and told me that you knowingly violated the [section] 402 [ruling] so I would admonish you on the record in front of the jury."  The court asked Leohner if he had "anything to say about that."

When Leohner asserted he would "[m]ake the record for appeal as clear as I can," the court said, "You will make the record as clear?  I don't understand.  That was at sidebar.  I had to make the record after.  You didn't make any record on that.  You just simply told me that you were purposefully violating a [section] 402 Order."  Leohner responded, "I don't recall it that way."

Leohner again requested counsel, but the court informed him there is no right to counsel in cases of direct contempt.  The court said it would adjudicate the matter immediately, and noted Leohner had offered neither an apology nor mitigating circumstances.  The court then found Leohner guilty of six different incidents of direct contempt, and promised to draft a written order as soon as possible.

On February 24, 2022, the court filed its written findings and order of direct contempt.

The court's order stated that on February 17, 2022, the court conducted a section 402 hearing at which it "ruled that the redacted video of the District Attorney's Office would be allowed, . . . and that the un-redacted video that the defense proffered was rejected; and the parties were told to use only the redacted video." The order went on to explain, "During the trial, when Mr. Leohner was cross-examining [Groszmann], Mr. Leohner proffered the un-redacted video when he asked the bailiff to play the video. Mr. Leohner, in front of the jury, also referred to the 'redacted' video. The Court stopped the bailiff and had counsel approach to remind Mr. Leohner about the Ruling of the Court. Mr. Leohner indicated that he knowingly and purposefully proffered the irrelevant video so that the Court would admonish him in front of the jury. The Court opined to Mr. Leohner that the attempt to knowingly publish inadmissible evidence to the jury is inappropriate, unethical and contemptuous, and warned him not to refer to the redacted video again. Mr. Leohner stated he understood." The finding of guilt as to count 2 stated: "Mr. Leohner is guilty of direct contempt (Count 2) for intentionally attempting to publish the video so that the Court would admonish him in front of the jury, which Mr. Leohner knowingly admitted doing for the sole purpose of being admonished on the record." The court imposed a sentence of one day in jail per count, which it stayed, and ordered to Leohner to pay fines for each of the six counts. As to count 2, he was ordered to pay $100.

## B. *Petition for Writ of Prohibition*

Leohner filed a petition for writ of prohibition challenging the direct contempt order. In his points and authorities supporting the petition, Leohner argued the contempt order was invalid because it was unsupported by evidence in the record.

Specifically as to count 2, Leohner recited that, "The trial court's order of contempt claims that during cross-examination of Sergeant Groszmann[,] [Leohner] 'proffered the un-redacted video when he asked the bailiff to play the video. Mr. Leohner, in front of the jury, also referred to the "redacted" video.' " But, Leohner argued, "No such proffer occurred." After summarizing his conduct and the prosecutor's statement to the court regarding his alleged violation of the court's order, Leohner argued the prosecutor's statement was a "mischaracterization of what actually occurred" and that the trial court had accepted that mischaracterization without checking the record. Leohner argued he "never attempted to introduce any exhibits into evidence during that examination. . . . He certainly never asked the bailiff to play the unredacted video as the trial court claims in its order adjudicating [Leohner] in direct contempt. . . . The trial court's assertion that [Leohner] asked the bailiff to play the unredacted [video] has absolutely no support in the record. It never happened." Leohner also asserted that "the trial court never made any ruling or order prohibiting the parties from referring to the fact that the videos were redacted." Because the order finding him guilty of direct contempt lacked any evidentiary basis in the record, Leohner argued it must be vacated.

## C. Alternative Writ

After reviewing the petition and supporting record, we issued an alternative writ, ordering the trial court to "[t]ake no further action . . . on Count 2 of your February 24, 2022 'Direct Contempt Findings and Order' in *People of the State of California v. Delano Blayze Malang*, Humboldt County Super. Ct. Case No. CR2102316, other than to set aside the adjudication of contempt and statement of punishment as to this count" or to show cause why the writ should not issue.

7

The order accompanying the alternative writ denied Leohner's challenges as to all counts of the direct contempt order except count 2. We stated it appeared that the superior court erred when it found Leohner guilty of contempt for " 'intentionally attempting to publish the video so that the Court would admonish him in front of the jury, which Mr. Leohner knowingly admitted doing for the sole purpose of being admonished on the record.' " Noting the record of the proceedings must show " 'affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depend[s],' " we explained that the alleged admission by Leohner that he attempted to introduce an excluded, unredacted video into evidence apparently occurred during an unreported sidebar conference, and was thus not part of the record.

Our order further observed, however, that Leohner "affirmatively represents that he 'never attempted to introduce any exhibits into evidence during that examination. [Citation.] He certainly never asked the bailiff to play the unredacted video as the trial court claims in its order adjudicating [Leohner] in direct contempt. [Citation.] The trial court's assertion that [Leohner] asked the bailiff to play the unredacted [video] has absolutely no support in the record. It never happened.' " The order stated: "We shall assume that petitioner makes this representation truthfully. (See Bus. & Prof. Code, § 6068, subd. (d) [it is attorney's duty '[t]o employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.'].)"

In response to the alternative writ, the superior court filed a return accompanied by three declarations: one from the courtroom bailiff, one from the judge, and one from the deputy district attorney. The return asserted "two reasons why the peremptory writ of prohibition should not issue." First,

8

the court explained, it "often utilizes side bar conferences" to save time, after which it makes "a record . . . so attorneys can deny, explain, and argue. In this case, there were no denials provided, explanations given, or arguments had. When confronted with [his] contemptuous behavior, [Leohner] simply stated [he] 'understood.' " Second, the court observed "the record clearly reflects that, after the side bar, the court and the District Attorney described on the record what [Leohner] stated at side bar, corroborating the version of events provided by Respondent, which are in stark contrast to [Leohner's] version."

Finally, the superior court's return stated: "Additionally, and perhaps more important, [Leohner] lied under penalty of perjury when [he] told this Court in [his] writ petition that [he] did not attempt to publish the video, stating 'It never happened.' . . . [Leohner] requested the exhibit on the record and the attempt was immediately followed by a '[d]iscussion at the bench.' . . . What is not on the record, but is described in the attached declarations, is that [Leohner] requested and then handed the DVD to the deputy, whose practice it is to assist attorneys with media. Specifically, the in-court deputies assist with placing DVDs or USB drives in the appropriate media player. After handing the DVD to the deputy, [Leohner] asked the deputy to put the DVD in the player, which the deputy began to do, getting so far as to open the DVD player with the disk in hand. Upon realizing which exhibit [Leohner] was attempting to publish, the judge stopped the deputy." The return urged this court "to consider taking action against [Leohner] due to their intentional misleading of the Court."

With permission of this court, the superior court also filed a supplemental return containing a declaration from the superior court executive officer, with video footage and screen prints showing Leohner

9

retrieving what appears to be a CD or DVD from the clerk and handing it to the bailiff.

## D. Sanctions

After reviewing the superior court return, this court issued a further order notifying the parties that we were considering, on our own motion, "imposing sanctions under California Rules of Court, rule 8.492 for the following statements in the petition filed March 1, 2022, statements which [Leohner] has verified under penalty of perjury: ['][Leohner] never attempted to introduce any exhibits into evidence during that examination. [Citation.] He certainly never asked the bailiff to play the unredacted video as the trial court claims in its order adjudicating [Leohner] in direct contempt. [Citation.] The trial court's assertion that [Leohner] asked the bailiff to play the unredacted [video] has absolutely no support in the record. It never happened.[']" We allowed Leohner 10 days to file an opposition.

Within the permitted time, Leohner filed an opposition to the sanctions motion. Leohner argued the statements quoted in our order were made in the memorandum of points and authorities accompanying the petition for writ of prohibition, and accordingly, were not included in the verified petition under penalty of perjury.

Leohner also noted it "remains correct that the assertion that [he] requested the bailiff to play the unredacted portions of the Defense Exhibit A tape has no support in the *record*." Leohner argued the only evidence of the colloquy pertaining to the use of the tapes happened in an unreported sidebar conference that was not part of the record, and accordingly, "that record does not establish that [he] intended to *play* or *publish* any portion of the redacted tapes, much less any portion of the audio subject to the Court's ruling following the Evidence Code section 402 hearing." Leohner argued the return

10

does not establish that he sought to introduce in evidence the unredacted tapes or audio the court had ruled irrelevant.

Leohner argues that while he intended to use and publish *portions* of the body-worn camera video, the record does not show he intended to use or introduce portions of the audio that the trial court ruled were inadmissible. Finally, Leohner argues that he "does not recall asking [the bailiff] to play Defense Exhibit A to the jury," and that "there would be no reason to make that request because the courtroom setup allowed [Leohner] to control video and audio evidence using a computer mouse." Leohner stated he "regrets any misleading impressions caused by the language highlighted by the Court in its notice," and asked us not to impose sanctions.

## II. DISCUSSION

### A. *Direct Contempt*

We first consider whether sufficient evidence in the record supports the trial court's direct contempt findings with respect to count 2.

A contempt committed in the immediate view and presence of the court is direct contempt that may be treated summarily. (*In re Buckley* (1973) 10 Cal.3d 237, 247 (*Buckley*).) " 'All that is required is that an order be made reciting the facts, adjudging the person guilty and prescribing the punishment.' " (*Ibid.*, citing Code Civ. Proc., § 1211.) A direct contempt order, however, is valid only if it recites facts with sufficient particularity to show, without aid of speculation, that the petitioner's conduct constituted a legal contempt. (*Boysaw v. Superior Court* (2000) 23 Cal.4th 215, 222.)

"In reviewing an adjudication of contempt, 'the sole question before us is one of jurisdiction of the trial court to render the judgment under review, and in such a case the review of the evidence is limited to determining

11

whether there was any substantial evidence to sustain the jurisdiction of the trial court.' " (*Buckley*, *supra*, 10 Cal.3d at p. 247.)

On review of a contempt proceeding " 'the evidence, the findings, and the judgment are all to be strictly construed in favor of the accused [citation], and no intendments or presumptions can be indulged in aid of their sufficiency. [Citation.] If the record of the proceedings, reviewed in light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled.' " (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1256 (*Mitchell*), italics omitted; *Koehler v. Superior Court* (2010) 181 Cal.App.4th 1153, 1166–1167 (*Koehler*).)

Here, the recital of facts in the trial court's order indicates that the finding of contempt on count 2 was based on the ruling in the section 402 hearing that the parties would only be allowed to use the prosecution's redacted video during trial.[4] According to the superior court's contempt order, after that ruling, Leohner "proffered the un-redacted video when he asked the bailiff to play the video." Leohner also "referred to the 'redacted' video" in front of the jury, and in a sidebar conference, "indicated that he knowingly and purposefully proffered the irrelevant video so that the Court would admonish him in front of the jury." Leohner was "guilty of direct contempt (Count 2) for intentionally attempting to publish the video so that the Court would admonish him in front of the jury, which Mr. Leohner knowingly admitted doing for the sole purpose of being admonished on the record."

---

[4] As discussed above, the transcript reflects the trial court ruled, "[T]he videos we'll play are the videos that the People have redacted. And they'll be marked and come into evidence."

12

Evidence supporting these facts, however, does not appear in the record.  The reporter's transcript reflects that Leohner asked, "May I have Defense Exhibit A?," followed by an unreported bench conference, followed by Leohner saying, "I need Defense Exhibit A back.  Let's do People's Exhibit—what's the redacted version?," followed by yet another unreported bench conference, followed by reported proceedings outside the presence of the jury at which the superior court ruled the video could not be presented during the cross-examination of Groszmann and an express command from the court that "we are not going to mention it's redacted."  The transcript does not reflect that any statement or request to play the video was made by Leohner to the bailiff, nor does the transcript reflect that Leohner admitted he attempted or intended to play the unredacted video purposefully in order to have the court admonish him in front of the jury.  Because the facts on which the superior court's findings and order were based are not apparent in the record, the contempt must be annulled as to count 2.  (*Mitchell, supra,* 49 Cal.3d at p. 1256.)

In its return, the superior court offers two reasons the record is sufficient to support the order of contempt.  First, the court points out that bench conferences are often unreported and notes that it is common practice for a court to make a record of what happened at a sidebar so an attorney can "deny, explain, and argue."  Yet here, when confronted with his "contemptuous behavior," Leohner simply stated he " 'understood.' "  Second, the superior court notes that after the sidebar, the court and the deputy district attorney described on the record what Leohner said at sidebar, corroborating the court's version of events, in stark contrast to Leohner's version.

13

Our review of the record shows that it is not as clear as the superior court suggests. After the jury had been excused following the two unreported sidebars, the prosecutor stated on the record that Leohner had violated the court's ruling on the section 402 motion when "he attempted to put in his unredacted version" of "Sergeant Groszmann's body-worn camera" video and when "the Court admonished him not to he *then let the jury know that the People's evidence has been redacted.*" (Italics added.) Thus, the prosecutor did not describe on the record what Leohner said during the sidebar conference. A few moments later, the superior court said on the record: "Okay. So . . . the purpose of a [section] 402 [hearing] is to do these things outside the presence of the jury. So to try to get in something that it was clear you weren't supposed to get in and then tell the Court at sidebar that you wanted to put it in and then have me shut you down is inappropriate and it's unethical. So I'll warn you not to do that again in this courtroom. Do you understand that?" Leohner said, "Understood."

The transcript thus reflects that Leohner responded "Understood" to the trial court's statement that his conduct was "inappropriate" and "unethical" and came immediately after the trial court's admonition: "So I'll warn you not to do that again in this courtroom. Do you understand that?" It is not clear from this exchange whether Leohner admitted that he tried to use the unredacted video so that the court would admonish him, or whether he simply saw it as a warning and agreed not to engage in such conduct in future. Moreover, the trial court's contempt order specifically found Leohner guilty of "intentionally attempting to publish the video so that the Court would admonish him *in front of the jury*, which [Leohner] *knowingly admitted* doing for the sole purpose of being *admonished on the record.*" (Italics added.) But the trial court's statement, "So to try to get in something that it

14

was clear you weren't supposed to get in and then tell the Court at sidebar that you wanted to put it in and then have me shut you down," does not clearly show Leohner told the court that he wanted to use the unredacted video for the purpose of being admonished in front of the jury. Because we must construe the record strictly without indulging any intendments or presumptions, we conclude the trial court's ambiguous description of Leohner's statements during the sidebar is insufficient to support its finding. (See *Mitchell*, *supra*, 49 Cal.3d at p. 1256; *Koehler*, *supra*, 181 Cal.App.4th at pp. 1166–1167.)

With its return in this court, the superior court submitted additional evidence for our consideration, including declarations from the judge, deputy district attorney, and the bailiff, as well as video evidence depicting Leohner retrieving what appears to be a CD or DVD from the clerk and handing it to the bailiff. We decline to consider this additional evidence which was not part of the record at the time of the contempt adjudication.[5] (See, e.g., *Clark v. Superior Court* (2021) 62 Cal.App.5th 289, 298, fn. 9 [court refused to consider exhibits attached to motion for reconsideration which were filed after ruling on summary judgment motion]; *Stanley v. Superior Court* (2012)

---

[5] We also question whether the return filed by superior court is proper. (See, *Koehler*, *supra*, 181 Cal.App.4th at pp. 1165–1166; 8 Witkin, Cal. Procedure (6th ed.) Extraordinary Writs, § 166 [respondent judge in petition for writ of prohibition "is a neutral party in the controversy"].) As the court recognized in *Koehler*, "a superior court generally does not have standing to appear in this court to defend its own rulings." (*Koehler*, at p. 1166 [superior court may oppose a writ petition in the " 'rare' " circumstances when the real party in interest did not appear and the issue involved " ' " 'directly impacted the operations and procedures of the court or potentially imposed financial obligations which would directly affect the court's operations' " ' "].) Nonetheless, we will take the approach employed in *Koehler* and consider the superior court's return. (*Ibid.*)

206 Cal.App.4th 265, 278, fn. 21 [refusing to consider supplemental declarations because "the only declarations relevant to the disposition of this writ are those which were before the trial court when it ruled on defendant's motion to dismiss"].)

In sum, this is a very close case with an ambiguous record, made all the more difficult by the fact that the alleged contemptuous conduct occurred during an unreported sidebar conference. Given our duty, however, to construe the record strictly in favor of the alleged contemnor, we conclude the evidence is insufficient to uphold the order as to count 2.

## B. Sanctions

In our May 13, 2022 order, we notified Leohner we were considering imposing sanctions pursuant to California Rules of Court, rule 8.492 for the following statements made in his petition for writ of prohibition: "[Leohner] never attempted to introduce any exhibits into evidence during that examination. [Citation.] He certainly never asked the bailiff to play the unredacted video as the trial court claims in its order adjudicating [Leohner] in direct contempt. [Citation.] The trial court's assertion that [Leohner] asked the bailiff to play the unredacted [video] has absolutely no support in the record. It never happened."

In his opposition, Leohner contends he made no false statements to this court and contends the additional evidence attached to the superior court's return and supplemental return do not establish he sought to introduce in evidence the unredacted version of the body-worn camera video or portions of the videos ruled inadmissible by the superior court. Leohner also argues he "does not recall" asking the bailiff to play the video to the jury and that there would have been no reason to do so as the courtroom setup allowed him to control video and audio evidence. He also observes that all of the statements

16

we quoted were made in his memorandum of points and authorities and thus were not verified.

Regarding Leohner's statements that he never asked the bailiff to play the unredacted video, we agree those statements are not directly contradicted either by the record or by the new evidence submitted with the return and supplemental return. As we have already discussed, no statement to that effect appears in the reporter's transcript, and the video submitted by the superior court with the supplemental return contains no audio. And while the declarations of the judge and deputy district attorney taken together clearly show that Leohner told the judge and deputy district attorney that he *intended* to *play* the unredacted video to the jury in order to be admonished on the record, they do not show that he verbally instructed the bailiff to play the video.[6] Accordingly, it appears his statements that he "never *asked the bailiff* to play the unredacted video as the trial court claims in its order adjudicating [Leohner] in direct contempt" is not contradicted by the declarations submitted with the return and supplemental return. (Italics added.)

However, as to Leohner's statement that he "never attempted to introduce any exhibits into evidence during that examination," his opposition to the sanctions motion focuses on the fact that the declarations of the bailiff, deputy district attorney, and judge do not indicate "what, if any, *portion* of

_____

[6] The deputy district attorney's statement in his declaration that "in front of the jury while trial was in session, Mr. Leohner requested that the bailiff play the 'unredacted' version of the Body Worn Camera" video is contradicted by the transcript of the proceedings, which do not reflect such a request was made. Nor is this statement corroborated by the unsworn declaration of the bailiff, which states only that Leohner asked him to " 'set this up' " or words to that effect, or the declaration of the judge, which states that Leohner asked the bailiff to put the DVD in the DVD player.

17

the tape [Leohner] intended to play or that it even be played at all." First, we agree with Leohner that as a technical matter, the declaration of the bailiff is unsworn, and accordingly, it has no evidentiary value. (Code Civ. Proc., § 2015.5; *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610–612.) But the judge's declaration states that Leohner told the judge at sidebar that "he intended to attempt having the DVD played in front of the jury" and the deputy district attorney's declaration states that Leohner said "he attempted to play the unredacted revision [*sic*] to the jury so that [the judge] would admonish him in front of the jury to not play the unredacted version." These statements, made under penalty of perjury, show that Leohner admitted at an unreported sidebar conference that he attempted to play the unredacted version of the video to the jury after the superior court had already ruled that audio portions of that exhibit were inadmissible and only the prosecution's exhibit would be played. This fact contradicts Leohner's statement that he "never attempted to introduce any exhibits into evidence during that examination," because they show he admitted to the court and opposing counsel that he attempted to publish the unredacted version of the video to the jury so that the court would admonish him.

Moreover, Leohner's opposition to the sanctions motion seems to concede that he tried to play the unredacted video. Leohner writes: "What is clear is Petitioner did not attempt to formally introduce an [*sic*] Defense Exhibit A into evidence during his cross-examination of Officer Heidi Groszmann. Petitioner did intend to use and publish portions of the body worn camera video as impeachment to challenge Officer Groszmann's credibility. The record does not establish that Petitioner intended to use or introduce the minimal portions of the audio that the trial court ruled inadmissible. Petitioner believed use of the video was necessary to cross-

18

examine Officer Groszmann. That situation is akin to cross examining a police officer with portions of the officer's report for impeachment, without moving the police report into evidence. Again, the record makes clear Petitioner did not move to admit the inadmissible portions of the video into evidence."

Importantly, Leohner admits he sought to "use and *publish*" the unredacted video. (Italics added.) Though he claims he did not "move to admit the inadmissible portions of the video into evidence," the trial court had already ruled that the only version of the video that would be played was the prosecution's exhibit. And while he likens his attempt to cross-examining a police officer with portions of the officer's report for impeachment, here Leohner sought to publish to the jury an exhibit that the trial court had already ruled would not be used. These facts, which Leohner does not deny, show that his brief in support of his petition for writ of prohibition misrepresents what happened in the trial court.

"An attorney is an officer of the court and owes the court a duty of candor. [Citation.] The duty of candor requires attorneys to use 'those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice of false statement of fact or law.' " (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 817; Bus. & Prof. Code, § 6068, subd. (d).) As our courts have emphasized, in evaluating an attorney's duty of candor, "[n]o distinction can . . . be drawn among concealment, half-truth, and false statement of fact. [Citation.] 'It is the endeavor to secure an advantage by means of falsity which is denounced.' " (*Levine v. Berschneider* (2020) 56 Cal.App.5th 916, 922.) For reasons discussed above, Leohner's statement to this court that he never attempted to introduce any exhibits during his cross-examination of Officer Groszmann appears demonstrably false, and

19

thus violates his duty of candor to this court.  (See, e.g., *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 97–99.)

That said, we acknowledge that the single statement we have found to constitute a misrepresentation or half-truth was made in argument and may have been the product of overzealous advocacy.  We also accept Leohner's apology to this court for any "misleading impressions" caused by his statements.  Under these circumstances, we will not impose sanctions.

## III.  DISPOSITION

Let a peremptory writ of prohibition issue directing respondent superior court to set aside the adjudication of contempt and statement of punishment as to count 2 of its February 24, 2022 "Direct Contempt Findings and Order" in *People v. Malang* (Super. Ct. Humboldt County, No. CR2102316).  The parties shall bear their own costs.

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


BANKE, J.


A164631
*Leohner v. Superior Court*

21