Filed 9/27/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>M.R.,<br><br>        Defendant and Appellant. | A137586<br><br>(Alameda County<br>Super. Ct. No. SJ2019358) |

A minor declared a ward of the juvenile court solely as a result of the minor's habitual truancy may not be placed in secure confinement during nonschool hours except under limited circumstances. (Welf. & Inst. Code,[1] §§ 207, subds. (a), (b), 601, subd. (b).) Notwithstanding the statutory limitations on the confinement of truants, in *In re Michael G.* (1988) 44 Cal.3d 283, 287 (*Michael G.*), our Supreme Court held that the juvenile court retains the authority to order the secure confinement of a habitual truant who is found to be in contempt of court.

This appeal presents the question of whether the juvenile court must comply with statutory procedures governing civil contempt proceedings (Code Civ. Proc., §§ 1209-1222) before ordering the secure confinement of a contemptuous habitual truant pursuant to *Michael G., supra*, 44 Cal.3d 283. We conclude that title 5 of part 3 of the Code of Civil Procedure, which governs civil contempt proceedings, applies in truancy cases.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

Because the juvenile court in this case did not comply with those statutory procedures, we shall annul the order of contempt.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 2, 2012, the Alameda County District Attorney filed a juvenile wardship petition alleging that 15-year-old M.R. was a habitual truant under section 601, subdivision (b). It was alleged that M.R. had missed 255 school periods during the previous school year without a valid reason. M.R.'s alleged truancy was the sole basis for the juvenile wardship petition.

M.R. admitted the allegations of the petition at a hearing conducted on October 19, 2012. The court declared him a ward and ordered that his care, custody, and conduct were to be supervised by his probation officer. He was directed to reside in the home of his parents. The court imposed a number of probation conditions, including that M.R. attend school daily, comply with a 6:00 p.m. curfew, and not stay away from home overnight without the prior permission of his probation officer.

The court conducted a progress report hearing on November 30, 2012. In the report prepared for that hearing, the probation officer stated that M.R. had failed to attend school daily and had failed to abide by his 6:00 p.m. curfew. According to the report, M.R. had attended only two of the 15 school days since the last court hearing and arrived home at around 11:00 p.m. almost every night. At the progress report hearing, the court imposed an additional condition requiring M.R. to attend Weekend Training Academy (WETA) three times. WETA, a weekend program that is an alternative to detention, provides wards with community service opportunities as well as social values training. The court also imposed but suspended 26 additional "WETAs." At the conclusion of the hearing, the court put the matter over for 30 days and told M.R. it could "have you remanded today" as a result of his violation of the court's orders. The court warned M.R. that "I'm going to have you do the WETAs and give you fair warning that if I get another report like this in 30 days that you can expect to spend the weekend here with us, all right?"

2

The court conducted the next progress report hearing on January 4, 2013. In the report prepared for that hearing, the probation officer stated that M.R. had gone to only one out of the three WETA's he was ordered to attend. M.R. called his probation officer and told him he was unable to attend any further WETA's due to illness. However, M.R.'s mother reported that he was not ill when he claimed to be. The probation officer directed M.R. to attend a special weekend of WETA for violating the court's order. The probation officer also reported that M.R. continued to violate his 6:00 p.m. curfew, had gone to Reno without his permission, and continued to be absent from school. For the one-month period ending December 13, 2012, M.R. had missed six full days of school in addition to 19 period absences. M.R. had received all F's in the previous quarter and was described as "immature and not taking responsibility for his actions." The probation officer recommended continuing the matter for 30 days. The probation officer's report made no mention of remanding M.R. to juvenile hall or holding him in contempt of court for violating the court's orders.

At the progress report hearing on January 4, 2013, it became clear that the juvenile court intended to incarcerate M.R. in juvenile hall for a weekend, stating: "He[] doesn't want to go into custody. That's what he's looking at at this point." M.R.'s counsel argued that the court lacked authority to incarcerate M.R. except under its contempt power, which is governed by the civil contempt provisions in the Code of Civil Procedure. Counsel also argued that a commitment order would violate *Michael G.,* *supra,* 44 Cal.3d 283, because the court had not tried GPS monitoring as a less restrictive alternative to secure confinement. The court denied counsel's request to file points and authorities with the court, stating that it had been addressing the issue of its authority to have minors remanded "for probably at least the last couple of months."

The court remanded M.R. to serve the weekend in juvenile hall. As support for its decision, the court stated that it sought a less restrictive alternative to secure confinement by ordering M.R. to complete three WETA's, which he failed to do. The court also cited M.R.'s continuing violation of his curfew and his trip to Reno in violation of the condition that he seek his probation officer's permission before staying away from home

3

overnight. The court clarified that M.R. was not to be placed with any of the "602's"—i.e., juveniles who had been made wards of the court under section 602 as a result of committing acts that would be considered crimes if committed by adults. Although the court remanded M.R. to serve the weekend in juvenile hall and referred repeatedly to its power to "remand" M.R., the court did not actually state that it found M.R. in contempt of court. M.R. filed a timely appeal from the court's order.

**DISCUSSION**

**1.    *Mootness***

M.R.'s period of confinement ended in early January 2013. Consequently, the Attorney General argues the appeal should be dismissed as moot because it is impossible for this court to afford M.R. any effective relief. (See *In re Sodersten* (2007) 146 Cal.App.4th 1163, 1217.) M.R. agrees the appeal is technically moot.

"[T]here are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479-480.)

Although the appeal is technically moot, we shall exercise our inherent discretion to resolve an issue of broad public interest that is likely to recur while evading appellate review. (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1.) The issue of broad public interest is whether the provisions of the Code of Civil Procedure govern a contempt proceeding against a habitual truant in the juvenile court. As M.R. points out, there are currently at least four other pending appeals in the First Appellate District that raise this same issue.[2] Thus, the issue is not only a matter that has generated public

---

[2] At M.R.'s request, we take judicial notice of the following appeals pending in the First District Court of Appeal that challenge orders requiring truancy wards to be incarcerated for contempt of court: *In re G.C.,* A137752; *In re L.S.,* A137585; *In re G.M.,* A137869; and *In re F.A.,* A137865. (Evid. Code, §§ 452, subd. (d), 459.)

4

interest but has, in fact, been raised on repeated occasions. Further, it is an issue that would likely evade review if appeals raising the issue were dismissed on mootness grounds, because it will almost invariably be the case that a contemptuous truant will have served his or her period of secure confinement before an appeal can be decided.

**2.** *Governing legal principles*

### a. The contempt power

"It is well settled that the court has inherent power to enforce compliance with its lawful orders through contempt." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1230.) The Legislature recognized the inherent contempt power of the juvenile court in section 213, which provides: "Any willful disobedience or interference with any lawful order of the juvenile court or of a judge or referee thereof constitutes a contempt of court." Section 213—and, for that matter, the Welfare and Institutions Code as a whole—does not specify the punishment for contempt or the procedures that must be followed by the juvenile court before it may issue an order of contempt.

Although the court has inherent power to punish contempts of court, the Legislature may place reasonable limitations on this power. (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 57; *In re McKinney* (1968) 70 Cal.2d 8, 10-11.) The Legislature has enacted such limitations on the court's inherent power in Code of Civil Procedure sections 1209 through 1222. Contempt proceedings under these statutes may arise out of either civil or criminal litigation. (*Koehler v. Superior Court* (2010) 181 Cal.App.4th 1153, 1158.) "Because of the potential punishment, [a contempt proceeding] is considered quasi-criminal, and the defendant possesses some of the rights of a criminal defendant." (*People v. Gonzalez* (1996) 12 Cal.4th 804, 816.) Among other things, a contemnor's guilt must be proved beyond a reasonable doubt when punitive sanctions are imposed (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1256), and the accused is entitled to a hearing at which the accused may call and cross-examine witnesses. (Code Civ. Proc., § 1217; *Farace v. Superior Court* (1983) 148 Cal.App.3d 915, 917.)

A contemptuous act committed in the court's presence is referred to as a direct contempt and may be addressed summarily. (Code Civ. Proc., § 1211, subd. (a); *Wanke,*

5

*Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1164.) An alleged act of contempt not committed in the immediate view and presence of the court is referred to as an indirect contempt. (*Koehler v. Superior Court, supra,* 181 Cal.App.4th at p. 1159.) " 'The facts supporting *indirect* contempt arise outside the judge's presence, requiring a more elaborate procedure to notify the person charged and to afford an opportunity to be heard. [Citations.] A common example is a party's disobedience of a judge's order.' " (*Ibid.*)

In order to institute a proceeding for indirect contempt under the Code of Civil Procedure, an affidavit must be presented to the court setting forth the facts constituting the contempt. (Code Civ. Proc., § 1211, subd. (a).) "It has long been the rule that the filing of a sufficient affidavit is a jurisdictional prerequisite to a contempt proceeding." (*Koehler v. Superior Court, supra,* 181 Cal.App.4th at p. 1169.) Without an initiating affidavit, a contempt order is void. (*Ibid.*; see also *In re Cowan* (1991) 230 Cal.App.3d 1281, 1286-1288.) "After notice to the opposing party's lawyer, the court (if satisfied with the sufficiency of the affidavit) must sign an order to show cause re contempt in which the date and time for a hearing are set forth." (*Cedars-Sinai Imaging Medical Group v. Superior Court* (2000) 83 Cal.App.4th 1281, 1286 (*Cedars-Sinai*); Code Civ. Proc., § 1212.) The issuance of the order to show cause commences a "separate action" on the contempt charges. (*People v. Gonzalez, supra,* 12 Cal.4th at p. 816.) The accused is entitled to a full and fair hearing that satisfies due process. (*Farace v. Superior Court, supra,* 148 Cal.App.3d at pp. 917-918; Code Civ. Proc., § 1217.)

A contempt judgment is reviewed under the substantial evidence standard. (*Mitchell v. Superior Court, supra,* 49 Cal.3d at p. 1256.) "In the review of a contempt proceeding 'the evidence, the *findings,* and the judgment are all to be strictly construed in favor of the accused [citation], and no intendments or presumptions can be indulged in aid of their sufficiency. [Citation.] If the record of the proceedings, reviewed in the light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled.' " (*Ibid.*)

**b.     Limitations on secure confinement of truancy wards**

A minor who is a habitual truant may be declared a ward of the juvenile court under section 601, subdivision (b). Truancy wards, as well as other minors who are declared wards of the court under section 601, are brought within the jurisdiction of the juvenile court as a result of acts that would not be considered criminal if committed by an adult. (*Michael G., supra,* 44 Cal.3d at p. 287, fn. 2; see § 601, subd. (a) [minor may be declared a ward for persistently refusing to obey reasonable directions of parents or for violating municipal curfew].) Their behavior " 'is considered unacceptable solely because of their age.' " (*Michael G., supra,* at p. 287, fn. 2.) Such minors are sometimes referred to as status offenders or section 601 wards. (*Ibid.*) A minor who is declared a ward of the court under section 602 must have committed a criminal act. (§ 602, subd. (a); *In re Ramon M.* (1978) 22 Cal.3d 419, 422, fn. 2.) These minors are typically referred to as juvenile delinquents or section 602 wards. (See *Michael G., supra,* at p. 1157.)

The Legislature has expressly limited the power of the juvenile court to order the secure confinement of section 601 wards. As relevant to truancy wards, section 601, subdivision (b) provides that "it is the intent of the Legislature that no minor who is adjudged a ward of the court pursuant solely to this subdivision shall be removed from the custody of the parent or guardian except during school hours." Section 207, subdivision (a) applies more generally to all section 601 wards and provides in relevant part that "[n]o minor shall be detained in any jail, lockup, juvenile hall, or other secure facility who is taken into custody solely upon the ground that he or she is a person described by Section 601 or adjudged to be such or made a ward of the juvenile court solely upon that ground . . . ." Section 207, subdivision (b) provides time-limited exceptions to the prohibition against secure confinement of section 601 wards in order to determine if there are any outstanding warrants or holds against the minor or to locate the minor's parents. (§ 207, subd. (b).)

In *Michael G., supra,* 44 Cal.3d at p. 287, our Supreme Court considered whether a contemptuous section 601 ward may be confined in a secure facility during nonschool

7

hours despite the express limitations on secure confinement of status offenders in sections 207 and 601. The court held that "a juvenile court retains the authority, pursuant to its contempt power, to order the secure, nonschool-hours confinement of a contemptuous section 601 ward." (*Michael G., supra,* at p. 287.) Although the court concluded that the statutory limitations in sections 207 and 601 did not deprive the court of its inherent power to punish a contemptuous section 601 ward with secure confinement during nonschool hours, it recognized that "respect for the intent of our coequal branch of government demands that courts exercise caution when imposing such sanctions against contemptuous status offenders." (*Michael G., supra,* at p. 296.)

In furtherance of the goal of exercising caution in contempt proceedings against status offenders, the *Michael G.* court adopted additional requirements that must be satisfied before a juvenile court may find a section 601 ward in contempt. (*Michael G., supra,* 44 Cal.3d at pp. 297-300.) First, a juvenile court must ensure that the ward "is given sufficient notice to comply with the order and understands its provisions." (*Id.* at p. 297.) Second, the violation must be egregious. (*Ibid.*) "The requirement of an egregious violation ensures that secure incarceration will not become a commonplace sanction in contravention of the Legislature's intent to comply with the federal mandate to deinstitutionalize status offenders." (*Id.* at p. 298.) Third, the juvenile court must have considered less restrictive alternatives and found them to be ineffective. (*Id.* at p. 297.) Fourth, the confinement conditions ordered by the court must ensure that the contemptuous section 601 ward is not allowed to intermingle with section 602 wards. (*Id.* at pp. 297, 300.)

The *Michael G.* court also required the juvenile court to memorialize its findings on the record. (*Id.* at p. 298.) By requiring express findings, the *Michael G.* court ensured "the court is aware that, by ordering the secure confinement of a juvenile who has not committed a criminal offense, it is taking the extraordinary step of acting contrary to the wishes of the Legislature but is justified in doing so because it is convinced there is no other alternative which will adequately serve the purpose of the contempt citation."

**3.**      *Applicability of Code of Civil Procedure to juvenile contempt proceedings*

In this case, the juvenile court purported to apply *Michael G.* in ordering M.R. to serve a weekend in juvenile hall. The court made findings concerning the egregious nature of the violation of court orders, stated that less restrictive alternatives had been attempted, and ordered M.R. to serve his time in juvenile hall separated from section 602 wards. In effect, M.R. was found guilty of indirect contempt because the contemptuous acts—i.e., the violations of probationary orders—occurred outside the court's presence. Yet the court did not follow the "elaborate procedure" set forth in the Code of Civil Procedure governing proceedings for indirect contempt. (*Koehler v. Superior Court, supra,* 181 Cal.App.4th at p. 1159.) The proceeding was not initiated with an affidavit setting forth the grounds for holding M.R. in contempt, and the court did not issue an order to show cause. (See Code Civ. Proc., §§ 1211, subd. (a), 1212.) Rather, M.R. learned for the first time at the progress report hearing that the juvenile court intended to hold him in contempt and incarcerate him for violations of the court's orders that occurred in the review period preceding the hearing. M.R. contends the court was required to comply with Code of Civil Procedure section 1209 et seq., and that the court's failure to do so renders the order of contempt void. For the reasons that follow, we agree with M.R.

As discussed above, the court's inherent power to punish contempt is tempered by reasonable procedural safeguards enacted by the Legislature in Code of Civil Procedure section 1209 et seq. (*Superior Court v. County of Mendocino, supra,* 13 Cal.4th at p. 57; *In re McKinney, supra,* 70 Cal.2d at pp. 10-11.) These procedural safeguards apply not only to contempt proceedings in civil and criminal litigation (*Koehler v. Superior Court, supra,* 181 Cal.App.4th at p. 1158) but also to contempt proceedings before quasi-judicial panels such as the Workers' Compensation Appeals Board. (See *Crawford v. Workers' Comp. Appeals Bd.* (1989) 213 Cal.App.3d 156, 164 [because board may conduct contempt proceedings "to the same extent as courts of record," it "must follow the applicable provisions of the Code of Civil Procedure pertaining to contempts"].)

Without much discussion, the court in *Michael G.* assumed that at least one of the statutory contempt provisions contained in the Code of Civil Procedure applies to contempt proceedings in the juvenile court under section 213, stating: "While no case has yet construed the scope of [section 213], the penalties for violation of section 213 are apparently those set forth in Code of Civil Procedure section 1218 for contempts generally: a fine of up to $1,000, imprisonment of up to five days, or both." (*Michael G., supra,* 44 Cal.3d at. p. 289, fn. 3.)  Further, the *Michael G.* court referred to section 1219.5 of the Code of Civil Procedure for guidance concerning whether the court's treatment of contemptuous juveniles is consistent with the Legislature's intent. (*Michael G., supra,* at pp. 298-299.)  Although the court did not directly address whether the contempt provisions of the Code of Civil Procedure apply in juvenile contempt proceedings under section 213, the court's references to the Code of Civil Procedure strongly suggest that the statutory procedural safeguards apply to juvenile court contempt proceedings.

In *Michael G.,* the court went to great lengths to caution against making the secure confinement of section 601 wards a commonplace occurrence, going so far as to impose additional requirements upon a juvenile court that may be considering holding a status offender in contempt of court. (*Michael G., supra,* 44 Cal.3d at pp. 297-298.)  The court did not suggest these requirements were imposed in lieu of the contempt provisions of the Code of Civil Procedure.  Indeed, given the court's cautious approach and reference to the "extraordinary step of acting contrary to the wishes of the Legislature" concerning the incarceration of status offenders, it is difficult to conceive that the *Michael G.* court envisioned stripping section 601 wards of the procedural safeguards contained in the Code of Civil Procedure.  A fair reading of *Michael G.* suggests that a juvenile court must comply with the contempt provisions of the Code of Civil Procedure as well as the additional requirements specified by the *Michael G.* court.

The Attorney General contends the Supreme Court in *Michael G.* permitted the confinement of a contemptuous section 601 ward without requiring compliance with the Code of Civil Procedure.  We disagree with the Attorney General's characterization of

10

the case. As we have discussed, while it is true the court did not specifically address whether the juvenile court had to comply with the Code of Civil Procedure, the court assumed the contempt provisions of the Code of Civil Procedure apply to contempt proceedings under section 213. (*Michael G., supra,* 44 Cal.3d at pp. 289, fn. 3, 298-299.) Further, the recitation of facts in *Michael G.* indicates the juvenile court complied with the procedural requirements of the Code of Civil Procedure for indirect contempt. The juvenile court issued an order to show cause why the truant should not be held in contempt of court for numerous unexcused absences in violation of the court's order. The truancy ward filed a demurrer and alternative motion to dismiss the order to show cause. Following hearings on the order to show cause, the juvenile court found the ward in contempt of court after rejecting the ward's demurrer and alternative motion to dismiss. (*Id.* at p. 288.) Thus, the procedure followed by the juvenile court in *Michael G.* appears to comply with the Code of Civil Procedure.

The Attorney General also argues that M.R. cites no authority holding that a juvenile contempt proceeding pursuant to section 213 is governed by the contempt provisions of the Code of Civil Procedure. While there appears to be no case directly addressing the issue, in *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1131, the Court of Appeal assumed that a juvenile court attempting to exercise its contempt powers authorized by section 213 may not impose a contempt sanction without strictly complying with the statutory procedure set forth in the Code of Civil Procedure. The *Vanessa M.* court is not alone in assuming that the contempt provisions of the Code of Civil Procedure apply to a section 213 contempt proceeding in juvenile court. An oft-cited juvenile court treatise states that, "*[a]s in other courts,* contempt in the juvenile court is done under Code of Civil Proc. § 1218 . . . ." (Seiser & Kumli, Cal. Juvenile Courts and Procedure (2013) § 1.14[1], p. 1-24, italics added.)

Given that the contempt provisions of the Code of Civil Procedure have broad application to civil and criminal proceedings as well as to quasi-judicial proceedings such as those before the Workers' Compensation Appeals Board, the critical inquiry is why

11

the juvenile court should be excused from complying with the statutory scheme laid out in Code of Civil Procedure section 1209 et seq.  The Attorney General has failed to explain why contempt in truancy matters should be the lone exception to the general rule that contempt proceedings are governed by the Code of Civil Procedure.  The Legislature could have provided a special procedure for contempt in truancy cases but did not do so, strongly suggesting it intended juvenile courts to follow the contempt provisions contained in the Code of Civil Procedure.

The Attorney General further contends the reference to one type of juvenile contemner in Code of Civil Procedure section 1219.5 "suggests that other contempts by minors within the jurisdiction of the juvenile court were intended to be excluded from the reach of the Code of Civil Procedure."  We disagree.  Section 1219.5 of the Code of Civil Procedure applies to minors under the age of 16 who refuse to take an oath or testify in court.  The statute is not limited in its application to wards of the juvenile court but instead refers more generally to any minor who refuses to testify in a court proceeding.  (Code Civ. Proc., § 1219.5, subd. (a).)  The statute requires a court to refer a minor found in contempt for failing to testify to the juvenile court probation officer for a recommendation as to the appropriate sanction.  (*Ibid.*)  A minor who refuses to testify may not be placed in a secure facility except under limited circumstances.  (Code Civ. Proc., § 1219.5, subd. (c).)   The plain import of the statute is to afford more protection to a minor than to an adult who refuses to testify.  The statute has no bearing upon the procedure applied in a contempt proceeding under section 213.  If anything, the statute tends to confirm that the Legislature intended to provide minors with greater procedural safeguards in contempt proceedings, suggesting that the contempt provisions of the Code of Civil Procedure apply in a juvenile court proceeding.

We conclude that the juvenile court must comply with the contempt provisions of the Code of Civil Procedure before ordering the secure confinement of a contemptuous habitual truant pursuant to *Michael G.*  We are mindful that requiring compliance with the Code of Civil Procedure makes the contempt process more cumbersome than it would otherwise be.  However, given the caution expressed by the court in *Michael G.,* it is not

12

overly burdensome to require the juvenile court to issue an order to show cause before conducting a contempt hearing in a section 601 proceeding. Further, the affidavit requirement, which is liberally construed under section 1211.5 of the Code of Civil Procedure, can be easily satisfied with a declaration under penalty of perjury by the probation officer or the district attorney. (See *In re Morelli* (1970) 11 Cal.App.3d 819, 830 [declaration is satisfactory substitute for affidavit].)

While we agree with M.R. that a juvenile court must comply with sections 1209 to 1222 of the Code of Civil Procedure before holding a habitual truant in contempt of court, we do not agree with M.R.'s contention that a juvenile court lacks jurisdiction to proceed with a contempt hearing against a section 601 ward unless the affidavit and order to show cause are *personally* served on the minor. In *Cedars-Sinai, supra,* 83 Cal.App.4th at p. 1286, the appellate court held that a court lacks jurisdiction to proceed with a contempt hearing unless an affidavit and order to show cause are personally served on an accused contemnor. The purpose of personal service is to give the court a basis for asserting personal jurisdiction over the accused contemnor.[3] (*Id.* at p. 1287, fn. 6; *Kroneberger v. Superior Court* (1961) 196 Cal.App.2d 206, 210.) In the juvenile wardship context, after the court declares the minor a ward "the court assumes jurisdiction over the minor and has the power to issue orders controlling the minor's conduct." (*In re Nolan W., supra,* 45 Cal.4th at p. 1231.) Thus, at least in the unique context of a juvenile who has been declared a ward of the court, it is unnecessary to serve the order to show cause *personally* on the ward because the court has already assumed jurisdiction over the ward. (See *In re Morelli, supra,* 11 Cal.App.3d at p. 838 [once personal jurisdiction has been obtained, the role of the order to show cause is to serve as notice and not to establish jurisdiction].) It is sufficient if the order to show cause is

---

[3] The statutory basis for the personal service requirement is found in sections 1015 and 1016 of the Code of Civil Procedure. (See *Cedars-Sinai, supra,* 83 Cal.App.4th at p. 1287.) Section 1015 of the Code of Civil Procedure provides generally that papers must be served on an attorney for a party that is represented by counsel but excludes "papers to bring the party into contempt" from the general rule requiring service on a party's attorney.

13

served in compliance with section 248.5, which governs service of orders in juvenile court proceedings. (See § 248.5 [juvenile court orders must be served personally or by first-class mail within three court days of issuance].)

Here, the summary procedure followed by the juvenile court did not comply with the contempt provisions of the Code of Civil Procedure. M.R. had no notice that the juvenile court would seek to hold him in contempt at the hearing conducted on January 4, 2013, until that hearing was well underway. We observe that the juvenile court largely avoided mentioning the word "contempt" at the hearing, and on appeal the Attorney General adds to the confusion by stating that "the court did not hold [M.R.] in contempt." However, under the circumstances presented here, the court had no power to order M.R. to serve a weekend in juvenile hall unless its order was based on a finding of contempt. Consequently, the court's order is most appropriately characterized as one for contempt. Because the contempt proceeding was not instituted by an affidavit and there was no issuance or service of an order to show cause, the court's order is void and must be annulled.[4] (*Koehler v. Superior Court, supra,* 181 Cal.App.4th at p. 1169; *In re Cowan, supra,* 230 Cal.App.3d at pp. 1286-1288.)

**4.      *Appealability of juvenile contempt order***

As a final matter, we consider on our motion whether the court's order is appealable. M.R. asserts the court's order is appealable under section 800, subdivision (a). Ordinarily, we would consider this issue at the outset because we lack jurisdiction to consider an appeal unless it is taken from an appealable judgment. (See *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1544.) We have reserved the issue until now because its resolution turns in part on whether contempt provisions of the Code of Civil Procedure apply to a contempt proceeding in the juvenile court.

---

[4]  M.R. also alleges the juvenile court failed to comply with the additional requirements imposed by the Supreme Court in *Michael G.* Because we conclude the contempt order is void as a result of the court's failure to comply with the contempt provisions of the Code of Civil Procedure, it is unnecessary to address this contention.

A judgment of contempt is not appealable. (See Code Civ. Proc., § 904.1, subd. (a) [appeal may not be taken from a "judgment of contempt that is made final and conclusive by Section 1222"]; *People v. Gonzalez, supra,* 12 Cal.4th at p. 816.) The proper method to challenge a contempt order is to seek extraordinary writ relief, either through a petition for a writ of habeas corpus, certiorari, or prohibition. (See *People v. Gonzalez, supra,* at p. 816 [contempt judgment reviewable by writ]; *Koehler v. Superior Court, supra,* 181 Cal.App.4th at p. 1165 [prohibition lies to challenge contempt order except when petitioner is in custody, in which case habeas corpus is appropriate remedy]; *Imuta v. Nakano* (1991) 233 Cal.App.3d 1570, 1584, fn. 18 [writ of certiorari is remedy for invalid contempt judgment]. )

Section 800, subdivision (a) provides that a minor in a proceeding under section 601 may appeal from "any subsequent order" following a judgment as "an order after judgment." Although the court's order here might be characterized as a "subsequent order" that is appealable under section 800, subdivision (a), we conclude the order is more appropriately described as a judgment of contempt that is made final under Code of Civil Procedure section 1222. This conclusion follows from our holding that a contempt proceeding in a truancy matter is governed by the contempt provisions of the Code of Civil Procedure. We are not aware of any reason to treat a contempt order of the juvenile court any differently from a contempt order of a civil or criminal court for purposes of determining whether the order is appealable.[5]

A challenge to a judgment of contempt requires writ review because it is vital that an order of incarceration be reviewed promptly. The writ process ensures timely resolution of the issue. Allowing review of a contempt judgment in a juvenile case to go

---

[5] Just as the Welfare and Institutions Code makes an order after judgment appealable in section 800, subdivision (a), the Code of Civil Procedure likewise provides that an "order made after a judgment" is appealable. (Code Civ. Proc., § 904.1, subd. (a)(2).) Nevertheless, a contempt judgment is not transformed into an appealable order simply because it is issued as an order after judgment. (See Code Civ. Proc., § 904.1, subd. (a)(1)(B).)

15

by way of appeal would virtually guarantee the matter would not be reviewed until after the period of confinement had ended.

Accordingly, we hold that a judgment of contempt against a truancy ward in a section 601 juvenile proceeding is not an appealable order. (Cf. *In re Nolan W., supra,* 45 Cal.4th at p. 1226 [reciting Court of Appeal's holding that exclusive method to challenge juvenile court contempt order is by writ petition].) As with other civil contempt judgments, the exclusive remedy is a petition for extraordinary writ relief. Although we have the power to dismiss M.R.'s appeal on the ground the challenged order is nonappealable, we have chosen instead to address the appeal on its merits by exercising our inherent discretion to treat the appeal as petition for extraordinary writ relief. (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367.)

## DISPOSITION

The order of contempt is annulled.

_____
McGuiness, P. J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.

Trial Court:                                    Alameda County Superior Court


Trial Judge:                                    Hon. Rhonda Burgess


Counsel for Defendant and Appellant:            L. Richard Braucher
                                                    Staff Attorney
                                                    First District Appellate Project, under
                                                    Appointment by the Court of Appeal

                                                Jonathan Soglin
                                                    Executive Director
                                                    First District Appellate Project

Counsel for Plaintiff and Respondent:           Ronald E. Niver
                                                    Deputy Attorney General

                                                Kamala D. Harris
                                                    Attorney General of California
                                                Dane R. Gillette
                                                    Chief Assistant Attorney General
                                                Gerald A. Engler
                                                    Senior Assistant Attorney General
                                                Eric D. Share
                                                    Supervising Deputy Attorney General