Filed 12/20/13  In re Giovanni C. CA1/2
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GIOVANNI C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>GIOVANNI C.,<br><br>     Defendant and Appellant. | A137752<br><br>(Alameda County<br>Super. Ct. No. SJ12185861) |

The issue briefed by the parties is whether the juvenile court has the power under the contempt provision of the Juvenile Court Law (Welf. & Inst. Code, § 213) to order the minor remanded into custody—in plain language, detained or incarcerated—for persistent violation of the court's order directing the minor to attend school.  During the pendency of this appeal, Division Three of this District held that a juvenile court remand order is not appealable, and that the juvenile court must follow the contempt procedures specified in the Code of Civil Procedure.  The period of the minor's remand has ended, thus mooting this appeal from the remand order, which in any event is not appealable.  However, due to certain unusual circumstances, we shall treat the purported appeal as a petition for extraordinary relief, which we will grant, and order the juvenile court to annul the remand order.

1

## BACKGROUND

Giovanni C. does not like attending school. After being declared an habitual truant by his school district, truancy mediation with the probation officer and the prosecuting attorney failed to correct the problem. This led to the prosecuting attorney filing a wardship petition under Welfare and Institutions Code section 601, subdivision (b).

On May 4, 2012, Giovanni admitted the allegations of the petitions, expressly acknowledging that he was in court "because of my lack of going to school," and that he would "be ordered to attend school each day, every day, every class, on time." His admission came after the court told him, "If you were to violate court orders, you could be ordered to participate in the weekend training academy. [¶] . . . [¶] And you could spend time in juvenile hall on the weekends if you were to violate court orders." Giovanni was declared a ward of the juvenile court, and admitted to probation upon specified conditions, among which were: "You're to attend school each day, every day, every class, on time and remain in those classes while they are in session. [¶] You're not to leave school until you finish your classes. [¶] You are to notify your probation officer of any tardies, absences, or disciplinary actions by school officials within seven days."

The following month the probation officer advised the court: "Since Giovanni last appeared in Court he has accumulated 4 days of absences, 38 missed periods, 11 tardies, and 3 tardies more than 30 minutes late . . . . [¶] . . . [T]he Assistant Principal . . . suspended Giovanni on May 11, 2012 for cutting school and he was supposed to return on Monday May 14, 2012 and Giovanni still cut class without any improvement in his attendance. Giovanni has completed his first year of high school and has completed 0 of the 55 credits attempted. He has received all F's in every class this entire school year. . . If the Court is so inclined, this Deputy is not opposed to remand."

On Friday, June 15, 2012, Giovanni's counsel advised the court that Giovanni "doesn't know why, but he always feels like staying up all night and sleeping all day and not getting out of bed to go to school. I think there may be some depression or some other mental health thing going on," and recommended "I think this is another case where his family should be required to get him medically evaluated." The court ordered Giovanni's father to "get him a medical evaluation to find out why he wants to stay up and doesn't want to go to school." Giovanni was "remanded for the weekend" to the juvenile justice camp.

Matters appeared to improve when the new school year started. In October, the probation officer advised the court that since the new year began on August 28, Giovanni ". . . has accumulated 21 missed periods, 16 tardies, and 4 unexcused tardies more than 20 minutes late," but was involving himself in some school activities. At the progress hearing held on October 5, the court complimented Giovanni on these activities, but told him that the absences were "completely" unacceptable. The court concluded that "I'm going to have you do one WETA [Weekend Training Academy] and that's the consequence for those 21 missed periods." This was explained as an "out-of-custody" arrangement: "You're not going to stay overnight . . . and you're not going to be locked up . . . Basically what happens is you go out, they give you classes about different things, you do something physical" like "clean up at a park." Giovanni was cautioned by his counsel that "the judge expects you to turn it around; otherwise, we may be talking about in-custody time in the future." The court stated "in-custody time, . . . I only go there when I see somebody that just is not making any effort to do what they need to do. That's not the case here with you . . . But in any event, 21 missed periods is not okay. I want you to have some consequences for that . . . Now you have a weekend that's gone . . . [¶] We're going to put this matter over . . . for further progress report and you're going to have to do one out-of-custody WETA."

On November 2, the probation officer reported that Giovanni failed to complete the ordered WETA.  In addition, "Giovanni has improved his attendance since the last time he appeared in Court.  He has been attending school daily, however he needs to reduce the tardies and get to each and every class on time.  In reference to Giovanni's grades, he is currently receiving F's in each class."  With respect to the missed WETA, the court noted "it looks like he's just blown it off."  The court told Giovanni "you came awfully close to going into custody," but ordered him to do another out-of-custody WETA over a weekend.

In December, the probation officer reported to the court that Giovanni was backsliding and had again been suspended:  "Since Giovanni last appeared in Court he has accumulated 7 unexcused absences, 27 missed periods, 16 tardies, and 2 tardies arriving more than 30 minutes late" "with no valid reason as to why he missed school."  "Giovanni's attendance is below satisfactory."

At a progress hearing on December 21, the court stated that Giovanni was "disrespecting his parents, missing several days of school.  When his mother tries to talk to him about that, he tells her to shut up and gives her the middle finger. . . .  So he is out of control [the description used by Giovanni's mother] sounds like to me.  [¶] The recommendation is for remand."  Giovanni's counsel responded strongly to the possibility "the court is inclined to remand, that is, incarcerate Giovanni."  In addition to the unresolved issue "that there may be a severe mental health problem here," counsel argued "the law does not allow this court to incarcerate this minor under the normal Welfare and Institutions Code sections.  There's no such power.  There is contempt power" but only if the court "meet[s] the due process requirements" of the Code of Civil Procedure.  Although the court continued to maintain it had the power to order a remand, it agreed to do "further investigation."  For the moment, "I am going to order that he do three additional WETAs.  Those are out of custody . . .  You [Giovanni] should be on notice that we're going to escalate here and that if you continue to do what it seems . . . is your course of conduct . . . .  [¶] . . . [¶] . . . The court thinks that it

4

warrants your spending time in juvenile hall, so be aware of that. . . . [¶] We're going to put the matter over till January the 18th. And I expect you to have those WETAs completed."

The probation officer's final progress report painted a bleak picture:

"Since Giovanni last appeared in Court, his attendance has made very little improvement. From January 7, 2013 through January 15, 2013, he has accumulated 15 unexcused missed periods. . . . [¶] . . . [¶] Giovanni seems to be arriving at school whenever he feels like going to school. When the undersigned spoke to mom on several occasions, she is never aware or approved Giovanni to be out of school during the periods he missed.

"Giovanni continues to disobey the orders of the Court. He has not made the improvement in his attendance that he needs to. The minor has not completed any of the 3 WETAs that were ordered at his last court hearing. His family has been assessed to work with the Lincoln's Child Center to begin counseling services and he has failed to make contact with his Community Liaison [Herbert Smyer]; despite all efforts that have been made by Mr. Smyer to make contact with Giovanni. In addition, his behavior in the home is unacceptable; he still disrespects his mother and doesn't comply with her house rules and the Court's curfew of 6:00 p.m. [¶] Giovanni continues to disregard the efforts of the Court, Probation, Lincoln Child Center, [high school] officials, and his mother. If the Court is so inclined, this Deputy is not opposed to remand."

The final progress hearing was held on January 18, 2013. Counsel for Giovanni referred to "arguments I've made to the court in other cases, . . . that I believe the court has no authority in the current posture to incarcerate my client. Based on the court's comments in other similar situations . . . I've given the court my brief that was submitted on the . . . case which presents all the arguments." Counsel reiterated his position that the exercise of the court's contempt power must be guided by the contempt provisions in the Code of Civil Procedure. Giovanni, who was present at the hearing, was remanded to the juvenile justice

center, until the afternoon of January 20, when he would be released to his mother.

On January 30, Giovanni filed a timely notice of appeal from the remand order.

**DISCUSSION**

One of the "other cases" mentioned by Giovanni's counsel at the January hearing was then being appealed. That case too involved a weekend remand for failure to attend WETAs as ordered by the same judicial officer. After Giovanni's appeal was briefed, our colleagues in Division Three held that the remand order was not appealable, but the defective appeal would be treated as a petition for an extraordinary writ. (*In re M.R.* (2013) 220 Cal.App.4th 49, 65.) Division Three further held that "Although the appeal is technically moot" because the remand period had expired, "we shall exercise our inherent discretion to resolve an issue of broad public interest that is likely to recur while evading appellate review." (*Id*. at p. 56.)

We adopt the same approach, in part. We too will treat this defective appeal as a writ petition. Although this dispute does qualify as moot—because the period for the weekend remand has long since passed—we will address some of the merits, although with nothing approaching the thoroughness of Division Three.

We have nothing to add to the substance of that analysis, which establishes that the summary nature of the remand procedure employed by the juvenile court was improperly used as a substitute for the statutory mechanism for adjudicating a contempt. We do, however, wish to express one thought that has occurred to us after reviewing a number of these remand orders from the juvenile court.

We have noted that the court has only ordered a remand (which has never been for more than a weekend) when it believed all other avenues to correct a ward's chronic truancy have been tried and failed. The record we have summarized here demonstrates the court's genuine concern for the ward's best interest. That focus never wavered, was never tainted with an inappropriate impulse or motive. The court was simply wrong in believing that the remand procedure could take the place of the more formalized contempt process.

6

Ordinarily, if the case would not be treated as moot, we would simply return the matter to the trial court, confident in the presumption that it would do the right thing. But given the novel situation, and the sensitive nature of proceedings in the juvenile court, we will direct the juvenile court to annul the remand order. This is no reflection on the dedication or ability of this particular judicial officer. We are certain that once the court becomes aware of the inappropriateness of the remand procedure, it will on its own initiative annul all such orders that are returned to it by this court.

## DISPOSITION

The purported appeal is dismissed. The juvenile court is directed to annul its remand order of January 18, 2013.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

_____
[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.