Filed 11/17/14  In re Andres A. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANDRES A., a Person Coming Under the Juvenile Court Law. | B255610 (Los Angeles County Super. Ct. No. DK00538) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ARMANDO A., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Dismissed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Armando A. appeals from the jurisdiction/disposition order declaring his son, Andres A., a dependent child of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (c),[1] placing Andres with his mother, Jasmine C., under the supervision of the Los Angeles County Department of Children and Family Services (the Department), and ordering that Armando have monitored visitation in a therapeutic setting after Andres' therapist and the Children's Social Worker (CSW) assigned to the case recommend that visitation may begin. Armando contends the juvenile court impermissibly delegated its authority over visitation to the therapist and the CSW. Because the juvenile court has since granted Armando visitation, we dismiss his appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

The Department filed a petition under section 300 alleging that 11-year-old Andres was at risk of serious physical harm (*id*., subd. (a)) and emotional harm (*id*., subd. (c)) due to physical abuse by Armando, and physical and emotional abuse by Armando and Andres' stepmother, Jeanette A. The petition further alleged that Armando failed to protect Andres from physical abuse by Armando and Jeanette (*id*., subd. (b)). The juvenile court found a prima facie case for detention and released Andres to his mother.

The Department stated in its jurisdiction/disposition report that, with respect to the allegation of physical abuse, Andres said that Armando pushed him and hit him. Andres described his father as a bully and said he hated it when Armando and Jeanette "blame

---

[1]     All further statutory references are to the Welfare and Institutions Code.

me for stuff and tell people mean things about me. I don't want to be made to go there anymore."

As to the allegation of failure to protect, Andres described an incident in which Jeanette grabbed the television remote from him and threw it at him. He also stated that Jeanette said negative things about him, which made him sad because his younger sisters would believe her statements about how bad he was.

As to the allegations of emotional abuse, Andres stated that one day at the mall Jeanette started screaming at him and calling him stupid and lazy, while people were staring at them. Another time Andres overheard Armando and Jeanette "saying I am just like my mom and stupid bitch." Andres did not want to come out of his room, and Armando "started to yell at me and ask me, 'what the hell is your problem, why are you always causing problems for me?' I told my mom I didn't want to go over there and I wanted to die because they make me feel like that. I get so angry that all I want to do is leave and never have to come back." Andres added that he knew Jeanette did not want to see him because she told him so.

Armando and Jeanette downplayed the allegations of physical and emotional abuse. They blamed Andres for overreacting and claimed he was exaggerating. They also blamed Jasmine for turning Andres against them.

Jasmine stated she had seen Jeanette "yelling and losing control of her emotions," and Jasmine believed that Jeanette had hit Andres. Armando would do nothing about it and Jasmine did not feel that Andres was safe with Armando and Jeanette. She said that things had deteriorated to the point that Andres would hold on to a chair and refuse to go to Armando's home.

Jasmine told the dependency investigator that she wanted to see Andres' relationship with his father improve. Andres stated, "Right now I don't want to see my dad or stepmom. I am willing to have my dad visit me only by himself." The dependency investigator viewed a videotape recorded in February 2012 in which Andres "crawled under the table shaking and crying refusing to go with his father." While Andres was under the table, Armando was telling Andres he had to go with him, and

3

Jasmine was begging Armando not to force Andres to go with him. Andres "started to shake and scream louder as he held onto the ground."

On October 28, 2013 the attorneys agreed that any visits between Andres and Armando would occur only in a therapeutic setting, and Jeanette would not participate. The CSW subsequently reported that Andres had consistently stated that he did not want any contact with Armando, and he was happier if no one talked about Armando. Jasmine told the CSW that she had attempted to "explain some of the positive things that can come from having a relationship with both side[s] of the family," but Andres continued to say he did not want any contact with his father or his side of the family. Andres attended counseling every week and told his therapist he was not comfortable seeing his father.

At the jurisdiction/disposition hearing on January 29, 2014, neither Andres nor his parents testified. Armando pleaded no contest to the petition as amended, and the trial court found true the allegations of emotional abuse and failure to protect. Counsel for Armando requested "family reunification in a therapeutic setting at least once a week with discretion to liberalize and come back in six months. If things haven't improved, then terminate the case." Counsel for Andres requested that visits in a therapeutic setting take place "once recommended by a therapist," based on Andres' statements that he did not wish to see his father. Counsel for the Department agreed.

The juvenile court sustained the petition and declared Andres a dependent of the court. The court removed Andres from Armando's home (§ 361, subd. (c)) and placed him in his mother's custody. The court maintained jurisdiction and ordered enhanced services for Armando, including parenting, anger management, counseling to address co-parenting and blended family issues, and conjoint counseling if recommended by Andres' therapist. The court also ordered that Armando could not have any visitation "until recommended by the therapist in consultation with the CSW and monitored visits in a therapeutic setting." Armando's counsel asked, "Did you say that no visits unless— because we can't leave visits at the discretion of, what are the visits for the child? No visits now and then possibly come back to see if there is a change?" The court responded, "At this point, the court is finding that visits would be detrimental. However,

4

the court is keeping the case open so Andres can continue in therapy. And once recommended by the therapist and in consultation with the CSW, monitored visitation for the father in a therapeutic setting." Armando timely appealed from this order on March 25, 2014, challenging only the ruling regarding visitation on the ground it constituted an impermissible delegation of the juvenile court's authority.

At a progress hearing on March 27, 2014 the juvenile court "continue[d the] detriment finding as to contact between Andres and his father." The court specifically stated that it was "not delegating [the] decision on when to have contact with father to the therapist." On October 7, 2014, at a progress hearing, the court ordered "therapeutic visits in 15-minute increments with a DCFS approved therapist."**2**

## DISCUSSION

On October 10, 2014 we asked the parties to explain why, in light of the October 7, 2014 order granting Armando visitation, we should not dismiss this appeal as moot. We have reviewed the parties' responses to our request, and we conclude this appeal is moot and must be dismissed.

As the parties recognize, an appeal becomes moot upon "the occurrence of an event [that] renders it impossible for the appellate court to grant the appellant effective relief." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054.) "'When no effective relief can be granted, an appeal is moot and will be dismissed.' [Citation.] 'On a case-by-case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding.'" (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1364.)

---

**2**     We take judicial notice of the juvenile court's subsequent minute orders. (Evid. Code, §§ 452, subd. (d), 459; *In re A.M.* (2013) 217 Cal.App.4th 1067, 1078; *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390.)

"'"'An issue is not moot if the purported error infects the outcome of subsequent proceedings.'"'" (*In re E.T.* (2013) 217 Cal.App.4th 426, 436; see *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) For example, a court may consider the merits of an appeal that otherwise would be moot where the erroneous denial of visitation prevents a parent from developing a meaningful relationship with a child, and thus prevents the parent from demonstrating the existence of an exception to termination of parental rights under section 366.26. (*In re Dylan T.* (1998) 65 Cal.App.4th 765, 769-770.) The same principle may apply where the denial of visitation could create prejudice in subsequent family law proceedings. (*In re C.C.*, *supra*, at pp. 1488-1489.)

Armando argues that "[t]he most recent order of the juvenile court on October 7, 2014 appears to laid [*sic*] a series of steps that present a roadmap to father obtaining visits with his son. However, this roadmap does not address either past breach in the father-son relationship or the ongoing consequences of that breach. Hence, since the error of which appellant complains continues to infect proceedings and is a matter of public interest in that other parent-child relationships may be also impaired by such orders, the appeal should not be deemed moot." Armando, however, has not demonstrated how any purported improper delegation of authority over visitation caused a breach in his relationship with Andres. Nor has he explained how he may be prejudiced in the future by the purported error. The record shows that Armando and Jeanette caused the breach in Armando's relationship with Andres. The record also shows that Armando did not argue that the juvenile court's denial of visitation was detrimental to Andres. There is nothing in the record to suggest that the juvenile court's order that Armando not have any visitation "until recommended by the therapist in consultation with the CSW and monitored visits in a therapeutic setting" has affected or will continue to affect the proceedings. (See, e.g., *In re B.L.* (2012) 204 Cal.App.4th 1111, 1117 [new visitation order rendered challenges to prior order moot].)

We also disagree with Armando's assertions that "[t]he issue in question here is of continuing public interest" and that "other parents in the same position[] as he should have the benefit of a decision by this Court on the merits of his case." There is a wealth

6

of authority on this issue for parents and other litigants to consult. (See, e.g., *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686-687 [juvenile court may not delegate the determination whether visitation may occur to social service agencies or therapists]; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 [juvenile court "may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner"]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1478 [although juvenile court "may base its determination of the appropriateness of visitation on input from therapists, it is the court's duty to make the actual determination"]; *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008-1009 ["juvenile court has the sole power to determine whether visitation will occur and may not delegate its power to grant or deny visitation to" a third party]; *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374 ["the juvenile court may delegate to the probation officer or social worker the responsibility to manage the details of visitation, including time, place and manner" but may not delegate "complete discretion to decide whether any visitation should occur"].) There is no "issue of broad public interest that is likely to recur while evading appellate review" (*In re M.R.* (2013) 220 Cal.App.4th 49, 56) that an opinion on the merits of this case would resolve. (See *In re Michelle M.* (1992) 8 Cal.App.4th 326, 329 [appeal moot where "no direct relief can be granted even were we to find reversible error, because the juvenile court no longer has jurisdiction and we are only reviewing that court's ruling"]; cf. *In re John W.* (1996) 41 Cal.App.4th 961, 969 [court reviewed expired non-modifiable exit order because such orders are "capable of repetition yet evading review," and "the question of which court (family law or juvenile dependency) to which this case should be remanded directly implicates the strong public interest in preventing the juvenile dependency system from being used to subsidize private child custody disputes"].)

## DISPOSITION

The appeal is dismissed.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

WOODS, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.